# PUTNAM v. PROUTY.

(140 N. W. 93.)

**Written contract — contemporaneous agreement — proof of — evidence.**

1. Plaintiff and defendant entered into a written contract, whereby the former turned over to the latter certain farming lands, stock, and machinery in Eddy county under an arrangement by which defendant was to farm the land, and feed and care for the stock, at his own expense, for a period of

Note.—For note on question of parol evidence to show intention of parties to written contract, se 17 L.R.A. 273.

three years, for a certain portion of the crops and of the stock and increase thereof. Plaintiff also therein agreed to sell to defendant five horses, two colts, and certain farm machinery for the sum of $800, one third to be payable each fall thereafter, but the title to such property was reserved in plaintiff as security for the payment of such purchase price, as well as security for defendant's faithful performance of all the conditions of such contract.

In April, 1907, plaintiff commenced this action in claim and delivery to recover the possession of all the personal property which he thus agreed to sell to defendant, and also certain other stock, grain, and hay, basing his right to the possession thereof upon defendant's alleged failure to fulfil the terms of the contract, either to properly feed and care for said stock, or to pay for the horses, colts, and machinery as he agreed to do. At the trial, defendant was permitted, over plaintiff's objection, to show a parol stipulation by plaintiff, at the time the written contract was made, to the effect that he would furnish certain buildings for housing such stock, and a breach thereof. *Held,* that such proof was competent.

**Contract — construction — incomplete instrument — separate oral.**

2. The stipulation in the written contract that defendant shall "feed and care for said stock at his own expense" construed and *held,* under the circumstances, not intended to cover the subject of providing buildings for housing such stock, and that the proof of the parol stipulation on plaintiff's part to furnish buildings for such purpose in no manner tended to change, contradict, or vary the terms of the written contract. The general rule, as prescribed in § 5333, Rev. Codes 1905, that "the execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument," does not preclude proof of the existence of any separate oral stipulation or agreement as to any matter on which the written contract is silent, and which is not inconsistent with its terms, if, from the circumstances of the case, the court infers that the parties did not intend the document to be a complete and final statement of the whole of the transaction between them.

**Jury — instructions — prejudicial error — material issues.**

3. The instructions of the court to the jury examined and *held* insufficient for the reason that they wholly fail to instruct as to the law of the case in any essential particular, and such instructions were also prejudicial on the ground that they were well calculated to mislead and confuse the jury.

4. While it is not reversible error to omit to instruct on some particular point, but which point is covered in a general way in the charge, in the absence of a request so to do, still a total failure to instruct upon the essential and controlling issues in controversy constitutes prejudicial error.

Opinion filed February 5, 1913.

Appeal from District Court, Eddy County, *E. T. Burke,* J., presiding at the trial, and *J. A. Coffey,* J., presiding on the motion for new trial.

Action by S. N. Putnam against A. B. Prouty. From that portion of the judgment in defendant's favor adjudging him to be entitled to the possession of certain personal property, or the sum of $700 the value thereof, in case a delivery cannot be had, and also adjudging him entitled to damages in the sum of $1,400, together with the costs and disbursements; and also from an order denying his motion for judgment notwithstanding the verdict or for a new trial, plaintiff appeals.

Reversed and a new trial ordered.

The action is in claim and delivery, and at the commencement thereof all of the property described in the judgment appealed from was taken into plaintiff's possession, where it has remained ever since, the defendant not rebonding such property.

The litigation arises over a dispute as to the rights of the respective parties under the following agreement:

This agreement, made in duplicate, and entered into this first day of December, A. D. 1905, by and between A. B. Prouty, of the first part, and S. N. Putnam, party of the second part and owner of the real estate and personal property hereinafter mentioned,

Witnesseth, That the party of the first part rents of the party of the second part for a period of three years from date, *i. e.,* from December 1, 1905, to December 1, 1908, the following described lands and premises, to wit: The S. E. $\frac{1}{4}$ of sec. 32, twp. 149, r. 65; the N. E. $\frac{1}{4}$ and the S. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of sec. 6; the S. $\frac{1}{2}$ of N. E. $\frac{1}{4}$ and lots 1, 2, 3, 4, 5, in sec. 6; also the S. E. $\frac{1}{4}$, sec. 6, all in township 148, range 65, in Eddy county, N. D., or so much thereof as said first party can and does farm in a good and husbandlike manner.

The party of the second part shall furnish all seed for sowing said land, pay $50 per year towards the cost of twine, and pay 2, 4, and 8 cents respectively for the threshing of his one half of the oats, wheat, and flax raised on said land.

The party of the first part shall do all work necessary in the raising of said crops, including the plowing, sowing, harvesting, and threshing

said grain, and pay all expenses attended thereto except as heretofore provided, and shall put all grain into the granary. And upon demand by first party after he shall have fulfilled his part of the contract, the second party shall deliver to him the one half of all grain so raised on said land. There being 120 acres of land now plowed and ready for crop on said land, acres of corn fodder unhusked and 50 tons of hay on said premises, it is hereby agreed that the first party shall, December 1, 1908, have on said premises the same No. of tons of hay in stack, the same No. of acres of unhusked but harvested corn, all of which shall be turned over to said second party as a condition precedent to the fulfilling of this contract on the part of the first party herein. All hay put up by first party during the time of this lease on said land shall be divided as follows: Two thirds to first party and one third to second party. All fenced pasture on said land shall be for the exclusive benefit of the first party, and the pasture adjoining in township 148–66 shall be used jointly by first and second parties, first party to make all necessary repairs and keep all fences in as good condition as at the date of this lease.

There being now 34 head of cattle on said premises, said first party is to feed and care for said stock at his own expense and on said premises for said term of three years, at the end of which time, as compensation therefor, said second party agrees to deliver to first party the one half of all increase of said stock and the one third of the original herd, and should second party dispose of any of said stock prior to the expiration of this term, he shall pay first party in proportion to the time said stock has been kept by first party.

There being now 22 hogs on said premises, first party shall take all care of them, including the cultivation of at least 6 acres of corn for feed (all other feed except corn to be furnished by second party), and as compensation therefor he shall have one third of all hogs and one third of the increase thereof.

Twelve sheep being on said premises, first party agrees to care for them, feed them, and provide all things necessary for their maintenance, and as compensation therefor he shall have one half of all increase, and one half of the wool from said sheep.

Said first party, desiring to have and purchase certain personal property belonging to second party, has given his promissory note to second

party for $800, to be paid as follows: "One third in one year, one third in two years, and one third in three years. When said note is paid in full, with interest, and all other conditions of this agreement are fulfilled as herein provided, said first party shall be the owner of the following described property: Two roan horses about thirteen years old, named Pete and Harry; one gray mare, named Flora, about nine years old; one brown mare about fourteen years old, named Daisey; one brown mare, named Maude, three years past; 1 Deering binder, 1 McCormick binder, 1 Kentucky drill, 1 gang plow, 1 mower, 1 rake, 1 disc. All of said property of every description being in the possession of and owned by second party to this contract till said conditions are fulfilled. Subject to proper use by first party.

A. B. Prouty,

S. N. Putnam,

Party of the second part.

The evidence discloses that defendant went into possession of the lands and personal property under said agreement, and remained in possession until the commencement of this action, April 3, 1907. At the time such action was commenced, there was due on the $800 note one instalment amounting to one third of the principal, but the defendant contends that he was entitled to credit upon said note for an amount at least equal to such first instalment; and the testimony on this issue is in conflict, the plaintiff contending that defendant was entitled to a credit of only $125.

The evidence discloses, without dispute, that in January, 1907, the 34 head of cattle were in a very deplorable condition, caused either by a lack of proper food or shelter; it appearing that out of the 34 head 17 died, and that their death was caused either by freezing or starving, defendant's contention being that their death was caused through the fault of the plaintiff in not providing a proper building for housing them. It is a conceded fact that, upon discovering the condition of such cattle, defendant voluntarily permitted plaintiff to take them into his possession, and remove them to a suitable place. A large mass of testimony was introduced relative to the condition of the cattle in January and to the cause thereof.

It is plaintiff's contention that, by the terms of the contract, the

title and right to the possession of all the personal property, including the cattle, horses, and farm machinery, was held and retained by him as security, not only for the payment of instalments due on the $800 note, but also for the performance of all other conditions of the contract including proper care and provision for the cattle. Defendant seeks to exonerate himself from liability on account of the condition of the cattle, by seeking to show that plaintiff undertook and agreed to furnish suitable buildings for housing the same, and that he failed and neglected to do so, and that he, defendant, by the use of his best efforts, was unable to so care for the cattle as to prevent the loss and serious injury thereto as aforesaid. The testimony offered by defendant, tending to show plaintiff's agreement to thus furnish a suitable place for housing said cattle, was objected to upon the ground that it tended to change, add to or enlarge the conditions of the written contract, and such testimony was received over plaintiff's objection, and exceptions were preserved to such rulings.

At the close of the entire evidence, plaintiff moved for a directed verdict, which motion was denied and exception taken. The verdict of the jury awarded to plaintiff the possession of the sheep, oats, speltz, wheat, and hay described in the complaint, but awarded to the defendant the horses, colts, harness, and farm machinery therein described, and fixed the value thereof at $800. By such verdict the jury also assessed damages against the plaintiff, and in favor of the defendant, in the sum of $1,400 for the detention of said property. Thereafter judgment was entered pursuant to the verdict, with the exception that the value of the property awarded to the defendant was reduced from $800 to $700. In due time plaintiff made a motion in the alternative for judgment in his favor notwithstanding the verdict or for a new trial, which motion was denied.

*Maddux & Rinker,* and *S. E. Ellsworth,* for appellant.

A written contract which does not express the whole agreement between the parties, in relation to the subject-matter, or is incomplete in itself, and is supplemented by a further parol contract, proof may be offered as to the parol contract, when properly pleaded. Hutchinson v. Cleary, 3 N. D. 270, 55 N. W. 729; Johnson v. Kindred State Bank, 12 N. D. 336, 96 N. W. 588; Bower v. Jones, 26 S. D. 414, 128 N. W.

470; Plano Mfg. Co. v. Root, 3 N. D. 165, 54 N. W. 924; Sargent v. Cooley, 12 N. D. 1, 94 N. W. 576; Reeves & Co. v. Bruening, 13 N. D. 157, 100 N. W. 241; First Nat. Bank v. Prior, 10 N. D. 146, 86 N. W. 362; Merchants State Bank v. Ruettell, 12 N. D. 519, 97 N. W. 853; Alsterberg v. Bennett, 14 N. D. 596, 106 N. W. 49; Anderson v. Matheny, 17 S. D. 225, 95 N. W. 911.

The court, in charging the jury, must instruct upon the material law points in the case. Moline Plow Co. v. Gilbert, 3 Dak. 239, 15 N. W. 1; Owen v. Owen, 22 Iowa, 270; Forzen v. Hurd, 20 N. D. 42, 126 N. W. 224.

The agreement, having been in writing, supersedes all previous or contemporaneous negotiations in reference to same subject, and is controlling. Rev. Codes 1905, § 533.

The oral agreement was in effect, on alteration of the written contract, and was never executed. Rev. Codes 1905, § 5382.

*James A. Manly* and *Knauf & Knauf,* for respondent.

Oral testimony may be given to show wherein a written contract is silent. Stephen's Digest of Ev. 163; Hand v. Ryan Drug Co. 63 Minn. 539, 65 N. W. 1081; Western Lime & Cement Co. v. Copper River Land Co. 138 Wis. 404, 120 N. W. 277; South Dakota C. R. Co. v. Smith, 22 S. D. 210, 116 N. W. 1120; Kennedy v. Falde, 4 Dak. 319, 29 N. W. 667; D. M. Osborne & Co. v. Stringham, 1 S. D. 406, 47 N. W. 409, 4 S. D. 593, 57 N. W. 776; Miller v. Way, 5 S. D. 468, 59 N. W. 467; Grand Forks Lumber & Coal Co. v. Tourtelot, 7 N. D. 587, 75 N. W. 901; Engel v. Scott & H. Lumber Co. 60 Minn. 39, 61 N. W. 825; De Rue v. McIntosh, 26 S. D. 42, 127 N. W. 534.

A part of the consideration for the contract was the contemporaneous oral agreement to furnish buildings, and extrinsic evidence was admissible to show same. 9 Cyc. 732; Dicken v. Morgan, 54 Iowa, 684, 7 N. W. 145.

FISK, J. (after stating the facts as above). Appellant has assigned ten alleged errors in this court, but he has argued only assignments numbered 1, 3, 4, 6, and 7. We shall therefore treat the other assignments as waived. Assignment number 1 challenges the rulings of the trial court in admitting oral testimony offered by defendant relative to an alleged agreement on plaintiff's part to furnish a

barn or a suitable place for housing the cattle, it being appellant's contention that, because the written contract contains a stipulation that defendant shall "feed and care for said stock at his own expense and on said premises," that such parol proof of an alleged agreement on plaintiff's part to furnish suitable buildings was wholly inadmissible, and that the ruling admitting it constituted prejudicial error. In brief, appellant relies upon the well-settled rule which is embodied in statutory form in this state, that "the execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." Section 5333, Rev. Codes 1905. Appellant's counsel argue that, by the terms of the written contract, defendant clearly and unequivocally agreed to "feed and care for said stock at his own expense," and that therefore an oral stipulation that plaintiff should provide a shed or building in which the cattle might be properly housed and cared for, not only varied the terms of the written contract, but in part contradicted them.

Appellant's contention is predicated upon the hypothesis that the stipulation aforesaid embraces, upon its face, the full and complete contract between the parties as to the care of the stock. We do not thus construe such clause, and we think it very apparent that the parties merely intended thereby to cover the defendant's duty under the contract with reference to furnishing the feed, and feeding as well as generally looking after such stock, but they did not intend that his duty in this respect should extend to furnishing buildings in which to house the same. Such a construction of said clause is wholly unreasonable in the light of the subject-matter of the contract, the season of the year when it was entered into, being in the month of December, and the circumstances under which and the purposes for which the same was entered into. The defendant, in a sense, became, under the contract, a mere servant of plaintiff's to cultivate his lands for a stipulated portion of the crops to be paid him by plaintiff, and to furnish feed for and to look after and care for the cattle, hogs, and sheep for a stipulated portion of the increase thereof, etc.; and it is wholly improbable, in view of all the circumstances, that it could have been the intention of the parties that defendant should supply, at his own expense, valuable fixtures or permanent improvements to plaintiff's farm

in the way of buildings in which to house said stock. It is, of course, true that such a contract, if entered into, would be perfectly legitimate and binding, but, as before stated, we do not thus construe the stipulation in question. It is a well-settled rule for construing contracts, that "while the writing itself is the only criterion by which the intention of the parties is to be ascertained, yet it is not necessary that the incompleteness thereof should appear on its face from a mere inspection of it, for it is to be construed in the light of its subject-matter and the circumstances under which and the purposes for which it was executed." 17 Cyc. 747, citing Potter v. Easton, 82 Minn. 247, 84 N. W. 1011; Wheaton Roller-Mill Co. v. John T. Noye Mfg. Co. 66 Minn. 156, 68 N. W. 854; Eighmie v. Taylor, 98 N. Y. 288.

In Wheaton Roller-Mill Co. v. John T. Noye Mfg. Co. supra, Mitchell, J., in speaking for the court, lays down what we deem a sound rule regarding the admission of evidence of parol stipulations not covered in the written contract, as follows: "All the authorities are substantially agreed that where, in the absence of fraud, accident, or mistake, the parties have deliberately put their contract into a writing which is complete in itself, and couched in such language as imports a complete legal obligation, it is conclusively presumed that they have introduced into the written instrument all material terms and circumstances relating thereto. But the point upon which the courts have sometimes differed is as to how the incompleteness of the written contract may be made to appear. Some cases seem to go to the length of holding that this may be done by going outside of the writing, and proving that there was a stipulation entered into, but not contained in it, and hence that only part of the contract was put in writing. If any such doctrine is to obtain, there would be very little left of the rule against varying written contracts by parol. Such is not the law. Other cases seem to go almost to the other extreme, by holding that the incompleteness of the writing must appear on the face of the document from mere inspection. But to furnish a basis for the admission of parol evidence the incompleteness need not be apparent on the face of the instrument. If the written contract, construed in view of the circumstances in which, and the purpose for which, it was executed,—which evidence is always admissible to put the court in the position of the parties,—shows that it was not meant to contain the whole bargain be-

tween the parties, then parol evidence is admissible to prove a term upon which the writing is silent, and which is not inconsistent with what is written; but, if it shows that the writing was meant to contain the whole bargain between the parties, no parol evidence can be admitted to introduce a term which does not appear there. In short, the true rule is that the only criterion of the completeness of the written contract as a full expression of the agreement of the parties is the writing itself; but, in determining whether it is thus complete, it is to be construed, as in any other case, according to its subject-matter and the circumstances under which and the purposes for which it was executed."

Mr. Stephens in his work on Evidence, chapter 12, § 2, states the rule as follows: There may be proved by parol "the existence of any separate oral agreement as to any matter on which a document is silent, and which is not inconsistent with its terms, if from the circumstances of the case the court infers that the parties did not intend the document to be a complete and final statement of the whole of the transaction between them." Judge Mitchell, of the Minnesota court, approves the above as an accurate statement of the rule, but criticizes it as being indefinite as to what are "the circumstances of the case," which the court may consider in determining the completeness or incompleteness of the document.

In Lewis v. Seabury, 74 N. Y. 409, 30 Am. Rep. 311, a written lease had been entered into between the parties, containing a clause that the plaintiff should make all "improvements and repairs" necessary to be made on the premises during the continuance of her term, and that such improvements and repairs should be left on the premises at the end of the term, but it contained no stipulation regarding the furnishing of fixtures by the defendant. The plaintiff was the lessee, and she sued to recover for a breach of an alleged oral contract or stipulation by defendant to furnish certain fixtures for the premises. It was insisted by the defendant that the written lease was conclusive of the contract, and precluded any evidence of an alleged oral agreement as to fixtures. In passing upon the points thus raised, it was held: "The case is undoubtedly very near the line, but I am inclined to think that such parol agreement was a separate and independent one, touching a subject not covered by the lease, and made for an independent con-

sideration paid by the plaintiff not stipulated for or referred to in the lease. The promise that certain specific fixtures then on the premises should be retained and remain there, so that the plaintiff might enjoy the benefit of it, if she took the lease, may be sustained as a previous distinct collateral agreement upon a collateral and independent consideration which did not merge in the subsequent written contract of hiring." Citing Erskine v. Adeane, L. R. 8 Ch. 756, 42 L. J. Ch. N. S. 835, 29 L. T. N. S. 234, 21 Week. Rep. 802; Morgan v. Griffith, L. R. 6 Exch. 70, 40 L. J. Exch. N. S. 46, 23 L. T. N. S. 738, 19 Week. Rep. 957; Hope v. Balen, 58 N. Y. 380. In addition to the foregoing, we call attention to certain provisions of our Civil Code which we deem more or less applicable. Section 5351, Rev. Codes 1905, provides: "A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates." Also § 5352, as follows: "However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract."

In the light of these rules, the point here in question is not difficult to decide. We think the evidence of the parol promise of plaintiff to furnish a suitable building or buildings for housing said stock was admissible, as such evidence in no manner tended to change, contradict, or vary the terms of the written contract, as the subject-matter of such parol agreement or stipulation is not and was not intended by the parties to be covered by the stipulation declaring that defendant should feed and care for such stock at his own expense. See also 17 Cyc. 720, wherein it is said: "The existence of a written lease does not preclude parol evidence of a collateral agreement between the lessor and the lessee, unless it is inconsistent with or contradictory to the terms of the written instrument. Thus it may be shown that there was an independent agreement of the lessor to make certain repairs or to provide certain fixtures, a warranty as to the condition of the premises, or a contemporaneous promise of the landlord that the adjoining premises shall not be used in a manner inconsistent with the convenient use of the demised premises."

We have examined the case of Johnson v. Kindred State Bank, 12 N. D. 336, 96 N. W. 588, as well as the other North Dakota authorities cited by appellant, but we find nothing therein which conflicts with

the foregoing rules.    Defendant laid a sufficient foundation in his answer for proving such alleged oral agreement and plaintiff's breach thereof.

We have passed upon the foregoing point, not because we deem its decision of very material or controlling importance as to the questions involved on this appeal, but we do so in view of our conclusion that, for reasons hereafter stated, we deem it incumbent upon us to order another trial of the action.    We are loath to disturb the verdict of the jury, but in view of the condition of the record we feel that there is no other alternative.    The testimony, which is unnecessarily voluminous, is a veritable jumble, with no pretense of orderly or logical arrangement, while the instructions of the court to the jury are strikingly devoid of proper rules to guide the jury in disposing of the various issues submitted to it.    As a necessary result, the verdict of the jury is but little more than a mere guess.    It would serve no useful purpose to set out the instructions in full in this opinion.    Suffice it to say that, in the main, they consist merely of a statement of the contentions of the parties as disclosed by the pleadings, followed by the statement that each party has the burden of establishing the things alleged by him by a fair preponderance of the evidence.    Also a few mere cautionary instructions to the jurors to the effect that they are the judges of the facts and of the credibility of the witnesses, and giving certain general rules for determining such credibility.    Then follows the statement in this language:  "There is another dispute that I might call your attention to, and that is the dispute as to whether or not there was an oral contract entered into between Mr. Prouty and Mr. Putnam at the same time that exhibit A was entered into regarding the buildings and regarding the board of the men.    The exact nature of that dispute you have heard, and when you are settling the other disputes it will be a part of your duty to settle the disputes regarding those different items."    Also that they must find whether in the fall of 1906 the instalment due on the note had been paid, "for the reason," as stated, "that the plaintiff alleges that the note was in default at the time that he took possession of the property, and that that was the reason he took possession, . . .    If the note was overdue and unpaid at that time, that is the instalment of it at least that was due. Mr. Putnam would be entitled to the possession of the property in order to enforce his lien against

his security, and that is the reason that that is material." The jury was given no light whatever to guide it in determining such questions, nor was it informed in any manner as to the effect upon their decision of a finding either way upon the existence of the alleged parol agreement relative to the furnishing of buildings by Putnam for housing said stock, although they were advised by the court that it was a material matter for them to decide. The pleadings disclose a controversy over the ownership and right to the possession of 5 horses, 2 colts, 2 binders, 1 drill, 1 gang plow, 1 mower, 1 rake, 1 disc, 12 sheep, 1,500 bushels of oats, 1,000 bushels of speltz, 200 bushels of Durum wheat, 225 bushels Fife wheat, 75 bushels flax, 3 sets of harness, and 25 tons of hay; but the instructions ignored, and in effect eliminated, everything except the five horses and machinery. The jury, however, by their verdict, found that plaintiff was entitled to the possession of the sheep, oats, speltz, wheat, and hay described in the complaint; but did not, by such verdict, determine the ownership thereof. They also found that defendant was, at the time of the commencement of the action, entitled to the possession of the horses, colts, harness, and machinery described in the complaint, and fixed the value thereof at the sum of $800, and the damages which defendant suffered by the taking and detention thereof by plaintiff at the sum of $1,400. The instructions wholly failed to enlighten the jury as to any rule by which they should be guided in determining such value and damages, nor were they instructed as to the law or rules which they should apply in determining whether or not the instalment due on said note in the fall of 1906 had been paid. Defendant did not contend that he ever paid the same in cash, but merely that he had a set-off thereto consisting of labor theretofore performed and board furnished to plaintiff, aggregating an amount more than sufficient to pay and satisfy such instalment.

In view of the fact that the jury, by their verdict, awarded to plaintiff the possession of the sheep, oats, speltz, wheat, and hay, he probably cannot claim prejudicial error on account of the action of the court in omitting to submit such issues to the jury, although they should have been instructed to determine the ownership of such property and also the right to the possession thereof.

The action involves merely the ownership and right to the possession of the personalty described in the complaint; and it does not occur to

us that the questions as to whether plaintiff orally agreed to furnish buildings for the stock, or as to whether the cattle died from freezing or starvation, or as to the degree of care and prudence exercised by defendant in looking after the cattle, have any materiality in so far as the right to the possession of the horses, colts, harness, and machinery are concerned. Defendant held such property under a contract to purchase the same, and his right thereto did not in any way depend upon the continuance in force of the other portion of the contract. They probably have a material bearing, however, upon the right to the possession of the other property, for if plaintiff had fulfilled his part of the contract and defendant was grossly negligent in the care of said stock, this no doubt would furnish plaintiff grounds for canceling the contract. On the contrary, if defendant was in no way at fault for the condition of said stock, no right of cancellation would exist, even though defendant may have voluntarily permitted plaintiff to remove said cattle from the farm. We might here add, in view of another trial, that even though plaintiff made the oral stipulation to furnish a new barn or buildings for the cattle, his failure so to do would not exonerate defendant from using due care, under the circumstances, to protect such stock from freezing to death. In other words, plaintiff's breach of such oral agreement or stipulation, if proved, would not necessarily constitute the sole or proximate cause of the loss of the cattle. If defendant could, by the exercise of due care, have saved such stock from dying by protecting them in some reasonable way from the extreme weather, he was required to do so.

However, on this appeal we are concerned merely with that portion of the judgment which is in defendant's favor, awarding to him the possession of the horses, colts, harness, and machinery or their value, $800, in case a delivery cannot be had, and the sum of $1,400 damages for the taking and detention thereof, and were it not for the reasons herein mentioned, we would feel obliged to affirm such judgment. We are agreed, however, that appellant's criticisms of the instructions as a whole are well taken. As before stated, such instructions fail to cover any of the material questions in the case as they should, and it is quite apparent that the jury was misled and confused by those which were given. While it is no doubt true, as we have held on several oc-

casions, that it is not reversible error to omit to instruct on some particular point in the case in the absence of a request so to do, still we think the law of the case should, at least in a general way, be covered to the end that the jury may receive reasonable aid and enlightenment upon the essential and controlling questions in controversy, and a total failure to thus charge will result in a mistrial, and this is especially true where, as in the case at bar, it appears at least doubtful whether substantial justice has been meted out by the verdict. See Moline Plow Co. v. Gilbert, 3 Dak. 239, 15 N. W. 1; Owen v. Owen, 22 Iowa, 270; Forzen v. Hurd, 20 N. D. 42, 120 N. W. 224; Barton v. Gray, 57 Mich. 622, 24 N. W. 638.

The amount of the damages awarded for the detention of the property appears to be somewhat excessive; but whether this is true or not we need not here decide, for we are convinced that this portion of the verdict has no sufficient basis for its support in the evidence. Such damages are based exclusively upon the value of the use of the property between the time of the commencement of the action and the trial, and the testimony from which the finding is made is to the effect that during a portion of each of the years the horses were worth a certain sum per day. In other words, the net value of their use for each year or during the entire period is not shown. Manifestly it would be unjust to merely show the earning capacity or reasonable value of such property for a part of the time without also showing what the cost would be of feeding and caring for the same during the remainder of the period.

In view of our conclusions as above announced, we deem it unnecessary to notice the other assignments. The alleged errors therein complained of will probably not arise on another trial.

The judgment and order appealed from are reversed, and a new trial ordered.

BURKE, J., being disqualified, took no part in the above decision.