1998 ND 111

**FELCO, INC., Plaintiff and Appellant,**

v.

**DOUG'S NORTH HILL BOTTLE SHOP, INC., and Janet Knudson, Defendants and Appellees.**

Civil No. 970234.

Supreme Court of North Dakota.

June 4, 1998.

Richard P. Olson (argued) and Scott A. Miller (on brief) of Olson Burns Lee, Minot, for plaintiff and appellant.

Tom P. Slorby, Minot, for defendants and appellees.

SANDSTROM, Justice.

[¶ 1] Felco, Inc., appeals from a judgment entered upon a jury verdict dismissing its action against Doug's North Hill Bottle Shop, Inc., and Janet Knudson for unpaid percentage rent and from an order denying judgment as a matter of law, or in the alternative, a new trial. We conclude, as a matter of law, the lease is unambiguous, payment of past due percentage rent was not waived under the lease, part performance is not consistent only with existence of the alleged oral agreement, the new written lease was not a complete integration, and the parol evidence rule does not bar evidence of the alleged oral agreement. We also conclude Felco's claim was not barred by N.D.C.C. § 41–02.1–54 and interest is to be determined as a matter of law. We therefore reverse and remand for a determination by the trier of fact of the existence of an executed oral agreement and, if not found, for entry of judgment on the amount of percentage rent owed and computation of interest at the legal rate.

I

[¶ 2] In 1980, J.R. (Jules) and Evelyn Feldmann leased commercial property to Doug and Janet Knudson, beginning January 1, 1981, and ending December 31, 1986,[1] with an option to renew the lease for an additional five-year term. The Knudsons operated Doug's North Hill Bottle Shop (Doug's) on the leased property. The lease provided for a minimum annual rent of $17,400 to be paid in monthly installments of $1,450, or, if greater, three and one-half percent of Doug's base sales for the lease year. Doug Knudson exercised the option to renew the lease until December 31, 1991. Ownership of the property was eventually transferred to Felco, Inc., of which Jules Feldmann is president. The Knudsons and Merlin Cooper also formed a corporation—Doug's North Hill Bottle Shop, Inc.—which succeeded to Doug and Janet Knudson's interests in the leased property.

[¶ 3] In December 1989 or early 1990, Feldmann and Associates, of which Jules Feldmann, who is a certified public accountant, is president, began providing accounting services for Doug's. From 1988 to 1992, Doug's had sales in excess of the amount needed to trigger the percentage rent provision of the lease, but Doug's paid only the minimum annual rent.

[¶ 4] When the renewal expired at the end of 1991, the lease became a month-to-month lease. In 1995, Kay Undlin, then sole stockholder of Doug's, sought a new five-year lease from Felco in order to sell the business. On July 6, during negotiations for the new lease, Feldmann sent Undlin a copy of the new lease to sign and also told her sales from previous years may have triggered the percentage rent provision. The new lease was not signed until December 29, 1995, but by

---

1. The lease refers to this as a five-year period.

its terms was made effective retroactively to January 1, 1995. The new lease was substantially similar to the 1980 lease, except it called for the monthly rent to eventually increase from $1,750 in 1995 to $2,000 in 1998 and 1999, and contained no option to renew.

[¶ 5] Subsequently, Felco concluded Doug's owed $51,185.96 in past due percentage rent, but Doug's refused to pay. Felco sued. The jury decided Doug's had delivered a statement of base sales to Felco, and judgment was entered dismissing Felco's action. Felco moved for judgment as a matter of law or, in the alternative, for a new trial. The trial court denied Felco's motions without explanation.

[¶ 6] Felco appeals the May 16, 1997, judgment and the June 23, 1997, order denying its post-trial motions. The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 28–27–01, 28–27–02, and 28–27–29.1. The appeal is timely under N.D.R.App.P. 4(a).

## II

[¶ 7] Felco argues the trial court erred in denying its motion for judgment as a matter of law under N.D.R.Civ.P. 50.

[¶ 8] This Court reviews the denial of a motion for judgment as a matter of law under "the same standard that the trial court was required to apply initially." *Okken v. Okken*, 325 N.W.2d 264, 267 (N.D.1982); *accord Perry v. Reinke*, 1997 ND 213, ¶ 12, 570 N.W.2d 224. The trial court's decision to deny or grant judgment as a matter of law is based upon "whether or not the evidence, when viewed in the light most favorable to the party against whom the motion is made, leads to but *one* conclusion as to the verdict about which there can be no reasonable difference of opinion." *Okken* at 267.

## III

### A

[¶ 9] The threshold issue involves the interpretation of the rent provision of the lease:

"2. *Rent. Tenant will pay to Landlord as annual rent for the premises the greater of a) $17,400 per "lease year" (minimum annual rent), or b) a sum equal to 3½ percent of the Tenant's "base sales" made during the "lease year" upon the premises (percentage rent).*

. . . .

"The minimum annual rent will be paid in monthly installments of $1,450 each, on the first day of each month commencing January 1, 1981. The Tenant's annual base sales shall be determined on a quarterly basis (March 31, June 30, September 30, December 31) not later than thirty (30) days following the quarter's end, and the excess of percentage rent over the minimum rent for the quarter, if any, shall be paid not later than forty (40) days following the lease quarter for which it is due. The Tenant's annual base sales for the entire lease year shall be determined not later than the following January 30, and the excess of percentage rent over the minimum annual rent, if any, or the return to Tenant of excess percentage rent collected by Landlord over the minimum annual rent as computed quarterly, if any, shall be paid not later than forty-five (45) days following the lease year for which it is due.

"Payment of percentage rent shall be accompanied by complete financial statements, North Dakota Sales Tax return and a statement of base sales and of the computation of such rent.

"*The Landlord or his agents may examine the Tenant's records of sales made upon the leased premises quarterly at the office of the Tenant, provided such examination is made within forty-five (45) days after a statement of base sales for a quarter is mailed or delivered by the Tenant to the Landlord and is limited to the period covered by such statement. Any claim by the Landlord for additional rent shall be made to the Tenant within ninety (90) days after the date when such annual statement of base sales is mailed or delivered to the Landlord. Any claim for addi-*

*tional rent not made within such period shall be deemed waived by the Landlord."* (Emphasis added).

[¶ 10] Felco asserts it did not waive the percentage rent owed by Doug's under the lease because it is not making a claim for "additional rent," but is seeking only the amount of percentage rent Doug's acknowledges it would have owed. Doug's argues "percentage rent" and "additional rent" are synonymous and, as such, once Felco received the statement of base sales, the ninety-day period for claiming additional rent began to run.

[¶ 11] While the trial court did not specifically interpret the lease, it consistently stated there was no evidence the lease was ambiguous. The trial court apparently agreed with Doug's interpretation of the lease, because the special verdict form required the jurors to decide whether a statement of base sales was delivered to Felco, and explained a "yes" answer dismissed Felco's action. Felco objected to the special verdict form and the effect of an affirmative answer. The jury answered "yes," and judgment was entered on the jury verdict.

### B

[¶ 12] The interpretation of a lease to determine its "legal effect is a question of law, fully reviewable on appeal." *See, e.g., Industry Fin. Corp. v. Redman,* 383 N.W.2d 847, 848 (N.D.1986). "The language of a contract is to govern its interpretation if the language" is unambiguous. N.D.C.C. § 9–07–02; *Williston Educ. Ass'n v. Williston Pub. Sch. Dist. No. 1,* 483 N.W.2d 567, 570 (N.D.1992). "Whether or not a contract is ambiguous is a question of law that we independently review on appeal." *Williston Educ. Ass'n* at 570. "A contract is ambiguous when rational arguments can be made for different positions about its meaning." *Id.* This Court reads contracts as a whole to give meaning to each word and phrase. *See* N.D.C.C. § 9–07–06; *see also Martin v. Al-*

*lianz Life Ins. Co.,* 1998 ND 8, ¶ 15, 573 N.W.2d 823 (interpreting insurance policy).

### C

[¶ 13] Doug's proffered interpretation fails to give separate meaning to the language "additional rent." Under its interpretation, "additional rent" has the same meaning as "percentage rent." We conclude, as a matter of law, the language in the lease is unambiguous and the term "additional rent" refers only to "additional" percentage rent, beyond the amount of percentage rent the tenant acknowledges, and the financial documents required to be provided by the tenant indicate, to be due. This conclusion is further supported by the terms of the lease which require "the excess of percentage rent over the minimum annual rent, if any" to be paid within 45 days of the end of the lease year, but allow 90 days from the mailing or delivery of the statement of base sales before a claim for "additional" rent is deemed waived.

[¶ 14] Under this interpretation, the 90–day period does not begin to run as to the amount of percentage rent owed. Only if Felco were seeking "additional rent," that is, "additional" percentage rent, by making an examination of Doug's financial records within 45 days of the date a statement of base sales is delivered by Doug's would the 90–day period be relevant. Felco has conceded it is making no claim for "additional rent." Because the 90–day waiver period is not triggered by this interpretation, Felco did not waive payment of the past due percentage rent, and any dispute as to whether a statement of base sales was delivered and whether other additional documents were required to be delivered is irrelevant,[2] and dismissal on the basis of a statement of base sales being delivered was improper.

### IV

### A

[¶ 15] As an alternative basis for sustaining the dismissal, Doug's argues Felco orally

---

**2.** The special verdict form asked only whether a statement of base sales had been delivered. The lease, however, clearly required the delivery of "complete financial statements, North Dakota Sales Tax return and a statement of base sales

and of the computation of such rent" in addition to payment of the percentage rent owed. At oral argument Doug's conceded no tender of the percentage rent owed was made.

agreed to forgive the past due percentage rent in exchange for an increase in rent. Felco responds there was no oral agreement to forgive past due rent and argues the trial court should have decided this question as a matter of law because the alleged agreement to forgive over $50,000 in past due percentage rent was not in writing as required by N.D.C.C. § 9–06–04(5), which provides "[a]n agreement or promise to alter the terms of repayment or forgiveness of a debt that is in an aggregate amount of twenty-five thousand dollars or greater" must be "in writing and subscribed by the party to be charged." Doug's, however, argues the doctrine of part performance "is a bar to the assertion of the statute of frauds." *See Cooke v. Blood Systems, Inc.*, 320 N.W.2d 124, 127 (N.D.1982). Felco responds part performance does not apply, because "part performance is limited to contracts involving real property" under N.D.C.C. § 9–06–04(3).

[¶ 16] Assuming, without deciding, part performance applies, it must be "consistent *only* with the existence of the alleged oral contract" to forgive the past due percentage rent. *E.g., Johnson Farms v. McEnroe*, 1997 ND 179, ¶ 19, 568 N.W.2d 920 (quotation omitted) (emphasis added); *see also Wachter Dev., L.L.C. v. Gomke*, 544 N.W.2d 127, 132 (N.D.1996) (explaining trial court found acts insufficient as a matter of law to take contract out of statute of frauds). In this case, payment of higher rent is not consistent *only* with the alleged oral agreement to forgive past due percentage rent. Among other things, the increased rent payment is consistent with the negotiations the parties had regarding the new lease needed to sell the business. This conclusion is supported by the fact the part performance Doug's alleges it made—the payment of higher rent—was ultimately made part of the new lease signed by the parties on December 29, 1995, and made retroactively effective January 1, 1995. In addition, Kay Undlin's testimony an oral agreement to waive the past due percentage rent was reached in February and higher rent was paid beginning in March 1995 is contradicted by Jules Feldmann's July 6, 1995, letter to Undlin, in which he enclosed a copy of the new lease for her "review and signature," but stated they would need to review the possibility of past due percentage rent being owed. Thus, even assuming the alleged oral agreement is considered under N.D.C.C. § 9–06–04(3), or part performance applies to contracts under N.D.C.C. § 9–06–04(5), we conclude, as a matter of law, part performance is not consistent only with the existence of the alleged oral agreement and the claimed part performance would not take the alleged oral agreement out of the statute of frauds. *Cf. Thompson v. North Dakota Workers' Compensation Bureau*, 490 N.W.2d 248, 252, 252 n. 3 (N.D.1992).

**B**

[¶ 17] Doug's also argues "a written agreement may be altered by an executed oral agreement" under N.D.C.C. § 9–09–06. *Accord Reitman v. Miller*, 78 N.D. 1003, 54 N.W.2d 477 syl. 2 (1952) ("A written lease complete in itself may be altered by a subsequent independent oral agreement and such oral agreement, if executed, is binding upon the parties."). Doug's asserts the oral agreement was executed because its payment of higher rent is a "detriment [it] was not obligated by the original contract to incur." N.D.C.C. § 9–09–06.

[¶ 18] This case, however, is complicated by the signing of the new lease in December 1995, subsequent to the alleged oral agreement, which Doug's is arguing modified the original lease. Felco argues, and Doug's acknowledges, "[t]he execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." N.D.C.C. § 9–06–07; *see Radspinner v. Charlesworth*, 369 N.W.2d 109, 112 (N.D. 1985) (noting N.D.C.C. § 9–06–07 codifies the parol-evidence rule). Doug's argues, however, the December 1995 lease:

"does not have any application to the claim for percentage rents due for the years 1988–1992. That lease pertains to 1995 and prospectively for five years and has no application nor does it affect any prior transactions or agreements of these par-

ties pertaining to matters outside of that contract. That lease may contain no provision whereby Felco waives its right to recover any past due percentage rents, but it also contains no provision that preserves them."

Thus, Doug's argument, while far from clear, appears to be N.D.C.C. § 9–06–07 does "not preclude proof of the existence of a separate oral stipulation or agreement as to any matter on which the [new lease] was silent, and which is not inconsistent with its terms, if from the circumstances of the case, the court infers that the parties did not intend the document to be a complete and final statement of the whole of the transaction between them." *Delzer v. United Bank,* 459 N.W.2d 752, 755 (N.D.1990); *accord Security State Bank v. Schultz,* 350 N.W.2d 40, 42 (N.D. 1984) ("Although it is possible for a written agreement ... to, as a matter of law, supersede any previous oral agreements the parties might have reached regarding the obligation in question ..., we cannot conclude as a matter of law that the Hold Harmless Agreement does so in this case."). As the *Restatement (Second) of Contracts* § 216(1) (1981) explains, "[e]vidence of a consistent additional term is admissible to supplement an integrated agreement unless the court finds that the agreement was completely integrated." "Whether an agreement is completely or partially integrated is to be determined by the court as a question preliminary to determination of a question of interpretation or to application of the parol evidence rule." *Id.* § 210.

■ [¶ 19] The *Restatement (Second) of Contracts* § 216(2) explains an agreement is not completely integrated if the written agreement "omits a consistent additional agreed term which is ... such a term as in the circumstances might naturally be omitted from the writing." The *Restatement* uses the following example:

"A owes B $1,000. They agree orally that A will sell B Blackacre for $3,000 and that the $1,000 will be credited against the price, and then sign a written agreement, complete on its face, which does not mention the $1,000 debt or the credit. The written agreement is not completely inte-

grated, and the oral agreement for a credit is admissible in evidence to supplement the written agreement."

*Id.* § 216 cmt. d, illus. 4. This scenario is similar to the situation in this case because Doug's owed Felco past due percentage rent, Doug's alleges an oral agreement to forgive the past due percentage rent in exchange for increased rent, and the new written lease agreement did not mention the debt. In addition, as comment d to section 216 of the *Restatement* explains, "[l]eases and conveyances are ... often in a standard form which leads naturally to the omission of terms which are not standard." *See also Putnam v. Prouty,* 24 N.D. 517, 525–27, 140 N.W. 93, 96–97 (1913) (citing authorities and discussing when parol evidence rule precludes admission of separate collateral agreements between lessor and lessee). Such are the facts of this case, in which the 1980 and 1995 leases are substantially similar. Therefore, under these circumstances we conclude the 1995 lease is not completely integrated and the parol evidence rule does not bar evidence of the alleged oral agreement. *See id.* at 528, 140 N.W. at 97 (reversing jury verdict and granting new trial because defendant should have been allowed to show oral agreement collateral to lease). Whether this oral agreement was in fact made, however, is an issue for the trier of fact. *E.g., Johnson Farms,* 1997 ND 179, ¶ 20, 568 N.W.2d 920; *Wachter Dev., L.L.C.,* 544 N.W.2d at 132 n. 2.

## C

■ [¶ 20] While the trier of fact may conclude there is an oral agreement, as discussed previously, agreements to forgive debts of over $25,000 are required to be in writing. *See* N.D.C.C. § 9–06–04(5); *see also* 3 Arthur Linton Corbin, *Corbin on Contracts* § 587 (1960) (noting "collateral oral promises, by either grantor or grantee, may be held to be rendered unenforceable by the statute of frauds"). We have already concluded part performance does not take the alleged oral agreement out of the statute of frauds because the alleged oral agreement is not consistent only with the payment of higher rent. The oral agreement may, however, be considered a modification of the initial written lease, and need not be in writing if it

is executed. N.D.C.C. § 9–09–06; *cf. Rettig v. Taylor Pub. Sch. Dist. No. 3*, 211 N.W.2d 743, 747 (N.D.1973) (noting there could be no alteration of written agreement under N.D.C.C. § 9–09–06 because oral agreement was made before written agreement). Thus, only if this alleged oral agreement has been executed need we remand this case to the trier of fact.

[¶ 21] As noted, Doug's argues it incurred a detriment by agreeing to the payment of higher rent when it was "at that time only obligated under a month to month lease." In *Habeck v. MacDonald*, 520 N.W.2d 808, 811 n. 1 (N.D.1994), we held an oral agreement was executed where a doctor had continued to provide services and did not give notice to terminate the agreement, even though he had the right to do so. *Cf. Cargill, Inc. v. Kavanaugh*, 228 N.W.2d 133, 138 (N.D.1975) (concluding the alleged oral agreement was not executed because under the alleged oral agreement Cargill had "in no way changed its relative position with Kavanaugh"). If Doug's made rent payments beginning in March of 1995 that were higher than required by the 1980 lease and Doug's did not give notice to end what had become a month-to-month lease, there would have been sufficient detriment for an oral modification as a matter of law. Because these are questions of fact, we remand this issue to the trier of fact.

### V

[¶ 22] During oral argument, the Court raised the issue of laches. Doug's raised laches in the trial court and initially submitted a jury instruction, but later concluded "latches [sic] is a doctrine that is equitable in nature" and moved for judgment as a matter of law. The trial court denied the motion, and Doug's has not cross-appealed or briefed laches on appeal. This Court addressed a similar situation in *Tom Beuchler Constr. v. City of Williston*, 413 N.W.2d 336, 339 (N.D. 1987) (citations omitted):

"Although ... the City was not the appellant, having prevailed in the trial court on the issue of negligence, it could have raised the issue of governmental immunity by a cross-appeal, because the trial court ruled against it on that issue. The City might also have defended the judgment before this court by urging that we affirm the trial court's judgment dismissing the complaint because the trial court's disposition was correct even though for a different reason, i.e., that the City was immune from liability pursuant to statute. Therefore, we will not address the City's governmental immunity claim on this appeal."

We decline to address laches on this appeal.

### VI

[¶ 23] As another alternative basis for affirming the judgment, Doug's also argues the statute of limitations bars Felco's action. *Cf. Signal Management Corp. v. Lamb*, 541 N.W.2d 449, 453 (N.D.1995) (addressing statute of frauds as an alternate basis to affirm judgment). Doug's contends N.D.C.C. § 41–02.1–54 "provides that there is a four year statue [sic] of limitations for an action for default under a lease contract. Therefore, it would appear that the Plaintiffs [sic] action is barred by that statute at least as to 1988 through 1991 in that the action was commenced in January of 1996." Felco correctly points out, however, N.D.C.C. § 41–02.1–54 is part of the Uniform Commercial Code, and applies to the leasing of goods, not real property. *See* N.D.C.C. § 41–02.1–03(1)(j) (defining "lease" as "a transfer of the right to possession and use of goods for a term in return for consideration"). This action is not barred by N.D.C.C. § 41–02.1–54.

### VII

[¶ 24] Felco also requests interest on the unpaid past due percentage rent. This issue was submitted to the jury:

"8. Do you find that the defendants should pay interest on the unpaid past due percentage rent from the date it was due? . . . .

"9. If so, at what rate? . . . ."

Because the jury dismissed the claim, it did not reach this issue.

[¶ 25] Whether interest is to be paid in a contract action is a question of law to be determined from the contract, and not a

question of fact for the jury. *See Troutman v. Pierce, Inc.*, 402 N.W.2d 920, 924 (N.D. 1987); *Metcalf v. Security Int'l Ins. Co.*, 261 N.W.2d 795, 802–03 (N.D.1977). Under N.D.C.C. § 32–03–04:

> "Every person who is entitled to recover damages certain or capable of being made certain by calculation, the right to recover which is vested in the person upon a particular day, also is entitled to recover interest thereon from that day, except for such time as the debtor is prevented by law or by the act of the creditor from paying the debt."

Under N.D.C.C. § 47–14–05, the legal rate of interest is six percent where a rate is not provided for in writing. On remand, should the trier of fact find no oral agreement to waive the past due percentage rent was made, the trial court shall compute the interest due.

## VIII

[¶ 26] Felco also argues, in the alternative, the trial court abused its discretion in not granting a new trial under N.D.R.Civ.P. 59. Because the trier of fact may find an oral agreement to waive the past due percentage rent, we remand this case for a determination by the trier of fact of the existence of an oral agreement. The parties apparently do not dispute $51,185.96 is the total amount of percentage rent owed—$3,162.15 for 1992, $10,760.41 for 1991, $11,703.76 for 1990, $5,877.91 for 1989, and $19,681.73 for 1988. If no oral agreement to waive the past due percentage rent is found or the oral agreement was not executed, judgment should be entered accordingly, and the trial court shall compute the interest on each year's unpaid percentage rent from the date it was due.

## IX

[¶ 27] The district court's order denying judgment as a matter of law is reversed in part, and the case is remanded for proceedings consistent with this opinion.

[¶ 28] VANDE WALLE, C.J., MARING and MESCHKE, JJ., and RALPH J. ERICKSTAD, Surrogate Judge, concur.

[¶ 29] RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of NEUMANN, J., disqualified.

