David L. SANDE and Deloris J. Sande, Plaintiffs and Appellants,

v.

CITY OF GRAND FORKS, a Municipal Corporation, and Urban Renewal Agency of Grand Forks, a Quasi-municipal Corporation, Defendants and Appellees.

Civ. No. 9466.

Supreme Court of North Dakota.

July 26, 1978.

Rehearing Denied Aug. 16, 1978.

---

John G. Shaft, of Shaft, McConn & Fisher, Grand Forks, for plaintiffs and appellants.

Robert Vaaler, of Vaaler, Gillig, Warcup, Woutat & Zimney, Grand Forks, for defendants and appellees.

VOGEL, Justice.

This is an appeal from a judgment dismissing with prejudice the complaint of the plaintiffs, Mr. and Mrs. Sande, seeking damages of $538,206.28 from the City of Grand Forks and the Urban Renewal Agency of Grand Forks (hereinafter Agency) due to an alleged failure of the Agency to act in accordance with Federal regulations in providing relocation assistance. The City has been dismissed from the case.

In 1972, the Agency established an Urban Renewal District which included property owned and operated by the Sandes as a bus depot. The Agency reached an agreement with the Sandes for the purchase of the property. The Sandes moved their business to another location on approximately May 31, 1975. Certain changes were required to be made in the new building in order to meet city requirements. Mr. Sande obtained an estimate of the cost of such alterations and discussed with the director of the Agency the possibility of the Agency's providing funds for such changes. The Sandes alleged that the director of the Agency informed them that such alterations could not be paid for by the Agency under its rules and regulations. The Greyhound Bus Company terminated the Sandes' contract. The Sandes allege that the information given to them by the director was erroneous because it was based upon old rules and regulations which had been revised to allow a liberalization of Government reimbursement of allowable expenses for alteration or improvement of structures or premises. The Sandes claim that if the director had correctly followed the revised rules and regulations there could have been no rejection of the claim for funds to cover the cost of alterations and they would have been able to continue their bus depot business.

Apparently the Sandes did not make formal application to the Agency for relocation funds until after their contract with the Greyhound Bus Company was terminated. Such claim for funds was rejected by the Agency on February 13, 1976, on the bases that (1) the proper procedure for submitting claims had not been followed and (2) the claim was for changes, alterations, or improvements which actually had never been made and would not be made. The Agency granted a rehearing on April 14, 1976, and thereafter affirmed its initial rejection of the Sandes' claim. The Sandes next appealed to the Department of Housing and Urban Development, which on July 9, 1976, affirmed the action of the Agency.

This action was commenced on January 19, 1977, and a hearing was held on September 8, 1977, at which time the Agency moved for dismissal of the case based upon a failure to state a claim upon which relief could be granted. The court requested that a motion for summary judgment be submitted. This was done, and supporting and opposing affidavits were filed. The motion was granted, but the judgment is one for dismissal. We believe this is an inadvertent misnomer. We will treat the judgment as the district court no doubt intended, as a summary judgment, as permitted by Rule 12(b), N.D.R.Civ.P.

In its findings of fact, conclusions of law, and order for judgment the court concluded that (1) the Sandes did not exhaust their administrative remedies; (2) the City of Grand Forks and the Agency are immune from suits of the nature involved here; and (3) the Sandes are precluded from maintaining this suit due to their failure to file timely claims pursuant to Chapter 295, Section 4, of the 1975 Session Laws, and Chapter 303, Section 16, of the 1977 Session Laws [codified as Note to Section 32–12.1–01, N.D.C.C.].

The issues as presented by the appellants Sande are as follows:

1. Whether the Agency is a political subdivision of the State of North Dakota.

2. Whether the Agency is immune from suit in this case.

3. Whether the Sandes' failure to file a timely claim pursuant to Section 4 of Chapter 295 of the 1975 Session Laws precludes their maintenance of this suit.

4. Whether the Sandes exhausted their administrative remedies and rights to judicial review.

I

We conclude that the Grand Forks Urban Renewal Agency is a municipal corporation.

The basic statutes on municipal corporations are found in Chapter 40–01, N.D.C.C. Section 40–01–02 provides:

"Municipalities shall be bodies politic and corporate under the name and style of 'city of _____' and under such name, may sue and be sued, contract and be contracted with, acquire and hold real and personal property for corporate purposes, and have an official seal which may be changed at pleasure."

Chapter 40–58 deals with urban renewal. Section 40–58–16 says, in part:

"Urban renewal agency.—1. There is hereby created in each municipality a public body corporate and politic to be known as the 'urban renewal agency' of the municipality: Provided, that such agency shall not transact any business or exercise its powers hereunder until or unless the local governing body has made the finding prescribed in section 40–58–05 and has elected to have the urban renewal project powers exercised by an urban renewal agency as provided in section 40–58–15."

Section 40–58–15 provides, in part:

"Exercise of powers in carrying out urban renewal project.—1. A municipality may itself exercise its urban renewal project powers as herein defined or may, if the local governing body by resolution determines such action to be in the public interest, elect to have such powers exercised by the urban renewal agency created by section 40–58–16 . . . ."

Thus the quoted sections of the applicable law recognize that a city's functions as to urban renewal may be exercised by the city or it may delegate them to an urban renewal agency. A city, which is a body "politic and corporate," may act itself as an urban renewal agency or it may create a new "body corporate and politic" to exercise those same functions. From this language we conclude that the agency, when created by a city, is a municipal corporation.

## II

Until April 8, 1975, municipal corporations were not liable in tort. On December 5, 1974, this court, in *Kitto v. Minot Park District*, 224 N.W.2d 795 (N.D.1974), declared that governmental immunity was abolished in North Dakota, with three important exceptions: first, the decision applied immediately to the parties in the *Kitto* case; second, it applied to all other cases prospectively only, effective 15 days after the adjournment of the Forty-fourth Legislative Assembly of the State of North Dakota; and, third, the right to recover in tort against local governments or political subdivisions was subject to certain limitations:

"A further limitation on the scope of decision should be observed. In certain other jurisdictions abolishing the doctrine, an immunity has been retained for certain acts which go to the essence of governing. See *Parish v. Pitts*, 244 Ark. 1239, 429 S.W.2d 45 (1968); *Spanel v. Mounds View School District No. 621*, 264 Minn. 279, 118 N.W.2d 795 (1962). We do not contemplate that the essential acts of governmental decision-making be the subject of judicial second-guessing or harassment by the actual or potential threat of litigation. We hold that no tort action will lie against governmental units for those acts which may be termed discretionary in character. Included within this category are acts traditionally deemed legislative or quasi-legislative, or judicial or quasi-judicial, in nature. The exercise of discretion carries with it the right to be wrong. It is for torts committed in the execution of the activity decided upon that liability attaches, not for the decision itself. In this regard, there is substantial experience in dealing with a discretionary function exception under the Federal Tort Claims Act, which may provide a useful source of reference. In adopting this exception we do not embrace the 'governmental' and 'proprietary' functions distinction which Justice Frankfurter termed the 'quagmire that has long plagued the law of municipal corporations.' *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). We seek a more narrow and a more rational ground for limiting liability." 224 N.W.2d at 804-805.

At the Forty-fourth Legislative Assembly (1975), the Legislature responded to the *Kitto* case by enacting a statute effective April 8, 1975, providing for limitations on municipal tort liability. Chap. 295, 1975 S.L. The validity of this enactment is not challenged. It provides for a "discretionary function" exception to liability:

"SECTION 2. (LIABILITY OF POLITICAL SUBDIVISIONS—LIMITATIONS.)

"1.  .  .  .

"2.  .  .  .

"A political subdivision shall not be liable for any claim based upon an act or omission of an employee of a political subdivision, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance, exercising due care, or the failure to exercise or perform a discretionary function or duty on the part of a political subdivision or its employees, whether or not the discretion involved be abused. The sovereign immunity of the state is not waived in any manner by this Act, and the provisions of this Act shall not be construed to abrogate the immunity of the state. Nothing contained in this Act shall be construed to obligate the fund or political subdivisions for an amount which is more than the limitations upon liability imposed by this Act. Any payments to per-

sons under the provisions of this Act shall constitute payment in full of any compromised claim or judgment or any final judgment under the provisions of this Act."

■ The Sandes argue that some of the tortious acts of the Agency took place before the effective date of that Act and therefore their claim as to such acts cannot be limited by the Act. This argument must fail, however, because the municipality was immune from all tort liability prior to the enactment of the Act. As we have stated, the *Kitto* case operated prospectively only, except as to the parties in that case, and the Legislature acted before the prospective date established by *Kitto*. Prior to the effective date of Chapter 295, 1975 S.L. the Urban Renewal Agency was immune from tort liability.

■ The Sandes also argue that certain duties of the Agency are specified as "mandatory" in the applicable Federal regulations which govern its operations, and therefore they cannot be "discretionary functions" as to which the Agency is immune from suit under *Kitto* and Chapter 295, 1975 S.L. They point out that Chapters 5 and 6 of HUD Handbook 1371.1 REV, *Relocation Policies and Procedures* [40 F.R. 7602, hereinafter "regulations"], are mandatory and the rest of the chapters are advisory, under Chapter 1, 1–2–b.

We do not accept the distinction between mandatory and advisory regulations as helpful in determining whether functions are "discretionary functions" under *Kitto* and Chapter 295. As is pointed out in *Redmond v. United States, Securities and Exchange Com'n*, 518 F.2d 811 (7th Cir. 1975), the Government has a duty to maintain law and order, but the methods it uses to do so are wholly within the discretion of its officers.

The duties of the Agency under Chapter 6 of the regulations may be mandatory, yet a substantial amount of discretion is permitted as to how those duties are exercised. This is illustrated by the provisions of Chapter 6, which contain such general language as "provide maximum assistance to business concerns in order to facilitate their moves to a replacement site" [6–2], "explore different approaches or methods for moving the concern's property to the replacement site" [6–2], and "provide each business concern with informational material" [6–4]. These broad terms allow for a substantial area of discretion.

The Sandes' principal contention seems to be that the Agency failed to bring to their attention a substantial revision of the regulations which liberalized the provisions for repayment of the cost of altering structures at a new site to meet the needs of the displaced business. One provision they point to allows up to $100,000 of reimbursable costs for physical changes and conversion of equipment if the local agency makes certain findings, but that any amount in excess of $25,000 requires prior HUD approval [6–21–c]. The Sandes assert that they would have taken advantage of this and other liberalized provisions if they had known of them. They assert that the Agency had a duty to advise them of the new regulations, but failed to advise them and instead continued to rely upon the former regulations which were more restrictive.

The Sandes point to no specific requirement that the Agency supply persons displaced by Urban Renewal with copies of, or information on, new regulations. They assert that this duty is implicit in such general terms as those quoted above relating to "maximum assistance," "informational material," and the like. But the context of the language relied upon does not fully support their contention. For example, the "informational material" referred to in 6–4 relates to the duty of the business concern to notify the Agency of its intention to begin its move and of the date it will begin, as well as the duty of the Agency to keep in touch with people affected by the project [2–20 of Chap. 2].

■ In view of the very broad language of the regulations, and the broad area of discretion as to methods of compliance allowed to each agency, we hold that the

Agency, in regard to the methods it used to pass on information as to its authority and methods, was engaged in a discretionary function, a quasi-governmental activity, and is therefore immune from suit on behalf of one who claims to have been given erroneous information to his detriment.

In this respect this case is similar to *Myers & Myers, Inc. v. United States Postal Service*, 527 F.2d 1252 (2d Cir. 1975), in which an allegedly negligent investigation was said to have led to nonrenewal of a star route mail contract. The Court of Appeals held that the suit was barred by the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. 2680(a). It also indicated that the award of the contract was a discretionary act. Similarly, in the case before us, numerous findings had to be made, and many areas of discretion had to be exercised, before the Sandes would be entitled to reimbursement.

In *Schmidt v. United States*, 198 F.2d 32 (7th Cir. 1952), *cert. denied* 344 U.S. 896, 73 S.Ct. 276, 97 L.Ed. 693 (1952), it was held that a government agency's misrepresentation of the oil-producing capacity of real estate was not ground for suit, since the giving of the information was within the discretionary functions of the governmental department involved.

We are aware that a number of cases construing the Tort Claims Act, 28 U.S.C. 2671–2680, have made a distinction between activities at the planning or policy-making level which are discretionary functions and activities at the operational level, and which are not. But this distinction, while helpful, is not controlling, as is recognized in *Downs v. United States*, 522 F.2d 990 (6th Cir. 1975). *Myers, supra*, holds that the awarding of government contracts is discretionary, and quotes from the leading case of *Dalehite v. United States*, 346 U.S. 15, 36, 73 S.Ct. 956, 968, 97 L.Ed. 1427, 1441 (1953): "Where there is room for policy judgment and decision there is discretion."

Since the Sandes' allegation is one of negligence in the exercise of a discretionary function, the claim is barred.

Ordinarily, we reverse summary judgments in negligence cases, holding that fact questions and inferences to be drawn from undisputed or agreed facts are for the jury. *Kirton v. Williams Elec. Coop., Inc.*, 265 N.W.2d 702 (N.D.1978). We have done so recently in a case in which summary judgment was granted in favor of State employees sued in tort for abuse of discretion, without reference to governmental immunity. *State ex rel. Holloway v. First American Bank*, 248 N.W.2d 859 (N.D.1977).

On the other hand, even where there are factual disputes between the parties, we have affirmed a summary judgment if the law is such that the resolution of the factual dispute will not change the result, which is foreordained by applicable statute or precedent. *Schoonover v. Morton County*, 267 N.W.2d 819 (N.D.1978). We believe this case is of the latter kind. We have carefully examined the regulations upon which the Sandes rely, as well as the *Kitto* decision and Chapter 295, 1975 S.L., and conclude that regardless of whether the Agency acted negligently, as the Sandes allege, the Sandes will not be entitled to recover because the Agency's acts come within the discretionary function exception of *Kitto* and Chapter 295, 1975 S.L. We therefore affirm the district court's summary judgment on this ground.

### III and IV

As additional grounds, the district court found that the Sandes had not exhausted their administrative and judicial remedies, and that they had failed to comply with Chapter 295, 1975 S.L., by filing their claim within 90 days, as that statute required. Without going into these matters at length, since it is not necessary to do so in view of our affirmance on another ground, we will comment briefly.

We doubt that the Sandes had to do anything more than they have done to preserve their right to sue, if they had such a right aside from the bar discussed above. They appealed administratively through the Housing and Urban Development administrative appellate procedure, up to the point where they were advised that they had

exhausted their administrative remedies but had a right to judicial appeal. In our court, they concede the correctness of the Federal administrative rulings, based upon their failure to make improvements, and then seek reimbursement for money paid out. In this case they sued in tort for claimed violation of duty and abuse of discretion. It appears that this is a separate cause of action, not barred by lack of any prerequisite administrative action.

As for the failure to file a claim within 90 days, we could cite it as a second ground for affirmance, since we have held Chapter 295 applicable, and it is conceded that no claim was filed. However, such short statutes of limitation may be open to constitutional objection. See *Reich v. State Highway Department*, 386 Mich. 617, 194 N.W.2d 700 (1972), and see *Christensen v. Midstate Aerial Applicators Corp.*, 166 N.W.2d 386, 37 A.L.R.3d 827 (N.D.1969), where a similar question was raised but not decided. We are therefore reluctant to base an opinion upon failure to file a claim within a short period, in the absence of briefing and argument on the possible constitutional question.

Affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.