**Alve W. McCROSKEY, Plaintiff and Appellant,**

v.

**CASS COUNTY; Donald J. Rudnick, Cass County Sheriff; Budd Warren, Charles Hoggarth, individually and as employees of Cass County, North Dakota, Defendants and Appellees.**

**Civ. No. 9900.**

Supreme Court of North Dakota.

March 12, 1981.

As Amended March 16, 1981.

Frederick D. Kraemer and Associates, Fargo, for plaintiff and appellant; argued by Frederick D. Kraemer, Fargo.

Mervin Nordeng, Asst. State's Atty., Fargo, for defendant and appellee, Cass County; on brief only.

DeMars & Turman, Ltd., Fargo, for defendant and appellee Budd Warren; argued by Joseph A. Turman, Fargo.

SAND, Justice.

This is an appeal by the plaintiff, Alve W. McCroskey [McCroskey], from a district court judgment dismissing with prejudice his complaint against the defendants, Cass County and Budd Warren[1] for failure to state a cause of action.

McCroskey's complaint in substance alleges as follows: That on 5 Dec 1978 two Fargo police officers, Gerhard Fettes and Donn Weaver[2] brought him to the Cass County jail for detoxification; that defendants Budd Warren and Charles Hoggarth were jailers on duty and took possession of McCroskey at the Cass County jail; that North Dakota law and the rules and regulations of the Cass County jail provide that a person may be detained for detoxification if apparently intoxicated; that jailers on duty at the Cass County jail have an absolute discretion in determining the length of time an individual will remain in detoxification; that McCroskey was not intoxicated and defendants Budd Warren and Charles Hoggarth failed to make an independent determination to ascertain if he was intoxicated and would constitute a danger to himself or others; and, as a result, that McCroskey suffered great physical and mental anguish, humiliation and shame, and was deprived of his liberty and damaged in his name and reputation.

The defendants, Cass County and Budd Warren, in their respective answers asserted that McCroskey's complaint failed to state a claim upon which relief could be granted, and brought a motion for judgment of dismissal as permitted by Rule 12(c) of the North Dakota Rules of Civil Procedure. The district court entered an order from the bench dismissing with prejudice McCroskey's complaint and judgment was entered.

1. McCroskey's complaint listed the defendants as Cass County; Donald J. Rudnick, Cass County Sheriff; Budd Warren; Charles Hoggarth, individually and as employees of Cass County North Dakota. However, Donald J. Rudnick had not taken office as sheriff at the time of the alleged actions which are the subject of this lawsuit. Consequently, the action against Rudnick was dismissed and a motion was made to amend the complaint to include as a defendant the Cass County sheriff at that time, Jack Dailey. That motion was denied at the same time the district court dismissed the complaint against Cass County and Budd Warren.

2. During oral argument we were informed that a lawsuit had been filed against the City of Fargo and police officers Fettes and Weaver for actions arising out of the same incident as the present lawsuit. We were also informed that that lawsuit had been dismissed for the same reason as this lawsuit. We note that an appeal to this Court from the dismissal of the lawsuit against the City of Fargo and its employees was filed on 11 Feb 1981.

The district court held that the term "injury" as defined in § 32–12.1–02(4), North Dakota Century Code, meant a personal injury, physical in nature, but did not include humiliation, shame, or mental anguish, and therefore the injuries alleged in McCroskey's complaint did not come within the meaning of the term "injury" defined by statute.

Furthermore, the district court found that the actions of Cass County and its employees were discretionary functions within the purview of § 32–12.1–03(3), NDCC, and therefore, the county and its employees were immune from liability.

McCroskey appealed from the district court judgment dismissing his complaint and raises the following issues: (1) Do the injuries alleged in his complaint fall within the meaning of "injuries" as defined in § 32–12.1–02(4), NDCC, and (2) were the acts of the county and its employees alleged in his complaint discretionary within the meaning of § 32–12.1–03(3), NDCC.

The defendants made a motion for judgment on the pleadings as permitted under Rule 12(c), NDRCivP.[3]

Cass County submitted an "affidavit" along with its motion for judgment on the pleadings. However, this "affidavit" is in reality a brief in support of the County's motion for judgment on the pleadings. Furthermore, it is apparent from the parties' briefs that they treated the motion as one for judgment on the pleadings, and not as a motion for summary judgment. Consequently, our review is within the purview of a Rule 12(c), NDRCivP, motion.

In *Johnson & Maxwell, Ltd. v. Lind*, 288 N.W.2d 763, 765 (N.D.1980), we made the following observations regarding a motion under Rule 12(b)(5), NDRCivP, which pursuant to Rule 12(h)(2), NDRCivP, is pertinent to a motion under Rule 12(c), NDRCivP:

"... we recognize that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. [Citation omitted.] The court's inquiry is directed to whether or not the allegations constitute a statement of a claim under Rule 8(a), N.D.R.Civ.P., which sets forth the requirements for pleading a claim and calls for 'a short and plain statement of the claim showing that the pleader is entitled to relief.'

"The complaint is to be construed in the light most favorable to the plaintiff [citation omitted], and the allegations of the complaint are taken as true. [Citation omitted.] The motion for dismissal of the complaint should be granted only if it is disclosed with certainty the impossibility of proving a claim upon which relief can be granted."

With this standard in mind, we will consider the issues presented by McCroskey on appeal.

■ McCroskey contends that the defendants are liable under § 32–12.1–03(3), NDCC, because their activities are not discretionary functions. Section 32–12.1–03(3), NDCC, provides as follows:

"3. A political subdivision shall not be liable for any claim based upon an act or omission of an employee of a political subdivision, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance, exercising due care, or the failure to exercise or perform a discretionary function or duty on the part of a political subdivision or its employees, whether or not the discretion involved be abused. Specifically, a political subdivision or an employ-

3. Rule 12(c), NDRCivP, reads as follows:
(c) Motion for Judgment on the Pleadings. After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

ee thereof shall not be liable for any claim which results from:

a. The decision to undertake or the refusal to undertake any legislative or quasi-legislative act, including the decision to adopt or the refusal to adopt any statute, charter, ordinance, order, regulation, resolution, or resolve.

b. The decision to undertake or the refusal to undertake any judicial or quasi-judicial act, including the decision to grant, to grant with conditions, to refuse to grant, or to revoke any license, permit, order, or other administrative approval or denial.

c. The decision to perform or the refusal to exercise or perform a discretionary function or duty, whether or not such discretion be abused and whether or not the statute, charter, ordinance, order, resolution, regulation, or resolve under which the discretionary function or duty is performed is valid or invalid.

Nothing contained in this subsection shall be construed to limit the liability of a political subdivision or an employee thereof for a personal injury arising out of the execution of any legislative or quasi-legislative act, judicial or quasi-judicial act, or discretionary function."

In *Kitto v. Minot Park District*, 224 N.W.2d 795, 804–805 (N.D.1974), this Court abolished governmental immunity[4] in North Dakota, but imposed the following limitation on governmental liability:

"In certain other jurisdictions abolishing the doctrine, an immunity has been retained for certain acts which go to the essence of governing. [Citations omitted.] We do not contemplate that the essential acts of governmental decision-making be the subject of judicial second-guessing or harassment by the actual or potential threat of litigation. *We hold that no tort action will lie against governmental units for those acts which may be termed discretionary in character.* Included within this category are acts traditionally deemed legislative or quasi-legislative, or judicial or quasi-judicial, in nature. The exercise of discretion carries with it the right to be wrong. *It is for torts committed in the execution of the activity decided upon that liability attaches, not for the decision itself.* In this regard there is substantial experience in dealing with a discretionary function exception under the Federal Tort Claims Act, which may provide a useful source of reference. In adopting this exception we do not embrace the 'governmental' and 'proprietary' functions distinction which Justice Frankfurter termed the 'quagmire that has long plagued the law of municipal corporations.' [Citation omitted.] We seek a more narrow and a more rational ground for limiting liability." [Emphasis ours.]

In *Sande v. City of Grand Forks*, 269 N.W.2d 93 (N.D.1978), we dealt with the discretionary function exception to governmental liability developed in *Kitto* and codified in Ch. 295, 1975 S.L., and Ch. 303, 1977 S.L. (see supra footnote 4). In that case the Sandes had sought damages due to the alleged failure of the Urban Renewal Agency of Grand Forks (Agency) to act in accordance with federal regulations in providing relocation assistance. The Sandes argued that because certain duties of the agency were specified as "mandatory" in the applicable federal regulations which governed its operations, they could not be discretionary

---

**4.** The *Kitto* decision applied immediately to the respective parties of that case. The *Kitto* decision also applied to all other cases prospectively only, effective 15 days after the adjournment of the 44th Legislative Assembly (1975) of the State of North Dakota.

At the 44th Legislative Assembly, the legislature responded to *Kitto* by enacting a statute effective 8 April 1975 providing for limitations on municipal tort liability. Ch. 295, 1975 S.L.

Furthermore, House Concurrent Resolution 3093 provided for a study of governmental immunity and a report to the 45th Legislative Assembly by the Legislative Council of its findings and recommendations, together with any legislation required to implement the recommendations. Chapter 303, S.L. 1977, codified at Ch. 32–12.1, NDCC, resulted from that study and recommendation.

functions. We declined to accept the distinction between mandatory and advisory regulations as helpful in determining whether or not the functions are discretionary. We noted that although the regulations may have imposed mandatory duties, a substantial amount of discretion was permitted as to how those duties were exercised. This was the critical determination in the resolution of that case in which we stated:

"In view of the very broad language of the regulations, and the broad area of discretion as to methods of compliance allowed to each agency, we hold that the Agency, in regard to the methods it used to pass on information as to its authority and methods, was engaged in a discretionary function, a quasi-governmental activity, and is therefore immune from suit on behalf of one who claims to have been given erroneous information to his detriment." *Sande v. City of Grand Forks*, 269 N.W.2d at 97–98.

We recognized, in *Sande*, that a number of federal cases construing the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680, have made a distinction between activities at the planning or policy-making level which are discretionary functions, and activities at the operational level which are not discretionary functions. While this distinction may be helpful, it is not controlling in this instance in determining whether or not a discretionary function was involved. In this instance if that distinction were controlling we could not avoid concluding that Cass County and its employees' activities were at the operational level, and therefore not discretionary functions. However, as we noted, that distinction is not controlling, and we must recognize that some discretion at the operational level may exist because of the pertinent provisions of the applicable statutes and regulations.

Section 5–01–05.1, NDCC, provides as follows:

"A peace officer shall have authority to take any apparently intoxicated person to his home, to a local hospital, or, whenever such person constitutes a danger to him-self or others, to a jail for purposes of detoxification. A duly licensed physician of such local hospital shall have authority to hold such person for treatment up to seventy-two hours. Such intoxicated person shall not be held in jail because of intoxication more than twenty-four hours. An intoxicated person shall not be placed in a jail unless a jailer is constantly present within hearing distance and medical services are provided when the need is indicated. Upon placing such person in a hospital or jail, said peace officer shall notify the intoxicated person's family as soon as possible. Any additional costs incurred by the city or county on account of an intoxicated person shall be recoverable from such person."

The standard operating policy for Cass County Correction Center [Center operating policy] regarding detoxification provides in pertinent part as follows:

"A peace officer shall have authority to take any apparently intoxicated person to his home, to a local hospital, or whenever such person constitutes a danger to him-self or others, to a jail for purposes of detoxification.

"Upon placing such person in a hospital or jail, said peace officer shall notify the intoxicated person's family as soon as possible.

"It. shall be the policy of this center to accept any person brought in by a law enforcement officer for detoxification, unless said person is in need of immediate medical treatment for injuries sustained outside of the center.

"Center staff, retains all authority for length of time an individual will remain in detoxification. *No one* is to be held longer than 24 hours for detoxification." [Emphasis in original.]

After a careful examination of the foregoing provisions, there can be no doubt that the enactment of both § 5–01–05.1, NDCC, and the Center operating policy contemplate some actions which are purely discretionary. The duties imposed upon the law enforcement officers under this statute and the Center operating policy are at the oper-

ational level as distinguished from the policy-making level, yet a substantial amount of discretion is required to execute some of these duties. See, *Sande, supra*. For example, a peace officer has discretion to determine whether or not a subject is apparently intoxicated. If the peace officer determines the subject to be apparently intoxicated, then the officer has the discretion to take the subject home, to a local hospital, or to the jail for detoxification if the officer determines that the subject constitutes a danger to himself or others.

However, both the statute and the Center operating policy require the police officer, upon placing the apparently intoxicated person in jail, to notify that person's family as soon as possible. No discretion is involved in executing this function. Similarly, the Center operating policy provides that "it shall be the policy of this Center to accept any person" brought in for detoxification. Again, no discretion is involved.

The Center operating policy provides situations in which a subject accepted for detoxification may be released. One of them rests upon the following policy:

> "A subject may also be released to the person's family, whenever such person no longer constitutes a danger to himself or others, or when center staff believes it to be in their best interest and the family appears capable of handling the situation."

This condition for release is dependent upon the notification which the statute and the Center operating policy require to be given to the person's family. Before the subject can be released to his family some observations must be made by the Center staff as to whether or not the subject constitutes a danger to himself or others, or whether or not the "Center staff believes it to be in their best interest" to release the person to the family which appears capable of handling the situation. Although the decision made as a result of the observations involves the Center staff's discretion, the notification to the family and the observations upon which the decision must be made are not discretionary.

Another situation rests upon the following regulation that "a subject may be released if it is apparent, to center staff, that the person is not intoxicated after a reasonable time of supervision." This also implies that observations be made as to whether or not the subject is intoxicated, and although the decision made as a result of the observation is discretionary, the necessity for the observations is not discretionary.

In this instance, McCroskey's complaint incorporates the requirements of § 5–01–05.1, NDCC, and the Center operating policy which include the necessity of notification to the subject's family and observations by the Center staff to determine whether or not to release the subject. Furthermore, McCroskey's complaint alleges that he was not intoxicated and that the defendants, Budd Warren and Charles Hoggarth, failed to make an independent determination to ascertain whether or not he was apparently intoxicated which could have triggered his possible release. Accordingly, construing the complaint in a manner most favorable to McCroskey, we conclude that the complaint alleges a claim involving non-discretionary actions by the County and its employees.

■ The second issue raised by McCroskey relates to an interpretation of the term "personal injury" in § 32–12.1–02(4), NDCC. That section provides as follows:

> " 'Injury' means personal injury, death, or property damage. Personal injury includes sickness or disease sustained by any person caused by a political subdivision or an employee thereof. Property damage includes injury to or destruction of tangible property caused by a political subdivision or an employee thereof."

McCroskey asserts that the "injuries" alleged in his complaint come within the meaning of "personal injury" as defined in § 32–12.1–02(4), NDCC.

The district court, in its ruling from the bench, made the following pertinent comments:

> "And it would appear to me that the Complaint is suing for something not

physical in nature, it's a mental state. Even though you use the word 'physical anguish' in there, I'm not able to see where there could be such a thing as physical anguish because anguish is a mental condition or state. But it involves mental anguish and involves humiliation and shame which are mental conditions. It is the opinion of this Court that the word 'injury' as defined in Section 32–12.1–02 does not cover the injuries as alleged in Plaintiff's Complaint. This Court takes the position that 'injury' means as it says in the statute, a personal injury. It can include sickness or disease but certainly shame, humiliation or mental anguish is not a disease, it's not a sickness in the common use of that word. So for the first reason, it is the opinion of this Court that the liability of political subdivision act covers only injuries and that the pleadings in the form of the Complaint do not come within the definition of injury and for that reason there can be no cause of action."

■ The primary purpose of statutory construction is to ascertain the intent of the Legislature. *State v. Moore*, 286 N.W.2d 274 (N.D.1979). The Legislature's intent in enacting a statute must first be sought from the language of the statute. *Apple Creek Township v. City of Bismarck*, 271 N.W.2d 583 (N.D.1978). Also, rules of statutory interpretation require us to construe the words of a statute in their ordinary sense. Section 1–02–02, NDCC.

Considerable authority exists for the proposition that a "personal injury" encompasses recovery not only for physical injuries, but also for any affront or detriment to the body, reputation or liberty or sense of enjoyment of persons. *Rolette County v. Western Casualty and Surety Company*, 452 F.Supp. 125 (D.C.N.D.1978); *Merimee v. Brumfield*, 397 N.E.2d 315 (Ind.1979); *Levine v. Sherman*, 86 Misc.2d 997, 384 N.Y. S.2d 685 (1976); *Roberts v. State*, 57 Ohio App.2d 77, 385 N.E.2d 634 (1978); *Mokry v. University of Texas Health Science Center*, 529 S.W.2d 802 (Tex.Civ.App.1975); see, 5A Words and Phrases p. 17 et seq.; 32 Words

and Phrases p. 437 et seq. These authorities also stand for the proposition that the definition for "personal injury" as given above is a broader, more comprehensive and significant term than the definition of "bodily injury" which encompasses only physical injuries to the body.

The distinction between these terms becomes significant when the legislative history surrounding the enactment of H.B. 1071 (Ch. 32–12.1, NDCC) is considered. The conference committee on H.B. 1071 was concerned about the costs and availability of liability insurance for political subdivisions. In conjunction with this concern, there was some discussion as to whether the recoverable injury under Ch. 32–12.1 should be a "personal injury" or a "bodily injury." The conference committee decided to use the term "personal injury" and that term ultimately became part of § 32–12.1–02(4), NDCC.

■ Based on the discussion by the conference committee and the distinction between personal injuries and bodily injuries, we believe that the intent of the Legislature in using the term "personal injury" in § 32–12.1–02(4), was to provide recovery for more than just physical injuries. We conclude that a "personal injury," as contemplated by Ch. 32–12.1, NDCC, includes physical injuries, disease, sickness, mental anguish and suffering.

■ However, we also believe that in order to recover for any mental anguish and suffering, there must be a direct causal connection between the alleged injuries and the acts of the political subdivision which are not discretionary.

In this instance, McCroskey's complaint sought damages for deprivation of liberty, physical and mental anguish, and humiliation and shame. We conclude that these alleged injuries come within the purview of personal injuries as contemplated by § 32–12.1–02(4), NDCC, and, therefore, McCroskey's complaint, viewed in a manner most favorable to him states a cause of action for personal injuries.

Because, under a Rule 12(c) motion to dismiss, we must take the allegations of McCroskey's complaint as true, and because these allegations disclose a set of facts which, if true, establish a claim upon which relief can be granted, we conclude that the district court erred in dismissing his complaint.

Accordingly, for reasons stated in this opinion, the decision of the district court is reversed and the case is remanded for further proceedings.

During oral argument the parties advised that a similar action was commenced against the City of Fargo involving the same issues and was dismissed for the same reasons as this case. An appeal has been filed in that case. If these cases are factually related and involve the same basic issues, the parties should consider stipulating so that the cases may be consolidated for trial for the sake of judicial economy.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.