**Bernard A. McLAIN and Kathryn A. McLain, Plaintiffs and Appellees,**

v.

**MIDWAY TOWNSHIP, a corporation, Defendant and Appellant.**

**Civ. No. 10144.**

Supreme Court of North Dakota.

Nov. 15, 1982.

Lundberg, Conmy, Nodland, Lucas & Schulz, Bismarck, for plaintiffs and appellees; argued by Irvin B. Nodland, Bismark.

Mackenzie, Jungroth, Mackenzie & Reisnour, Jamestown, for defendant and appellant; argued by James A. Reisnour, Jamestown.

ERICKSTAD, Chief Justice.

This is an appeal by Midway Township from a judgment of the District Court of Stutsman County, dated December 7, 1981, by which the court awarded the plaintiffs, Bernard and Kathryn McLain, damages, together with costs and disbursements, against Midway Township, in the total amount of $15,456.25. We reverse.

The McLains own, jointly with other persons, a section of land in Midway Township. During 1979, the McLain's children purchased a house from the Jamestown school system which they gave to the McLains as a present for their 34th wedding anniversary. At the time this gift was made, Bernard, an ordained minister with the United Church of Christ, and Kathy resided at Winthrop, Minnesota. Upon receiving the house as a gift the McLains made plans to move it to their property in Midway Township to use as their retirement home within a couple of years.

The McLains contacted Charles Purdy, the zoning administrator for Midway Township, to determine how to proceed with their plans. Purdy gave them a copy of the Midway Township zoning ordinance with which he told them they must comply, and he specifically instructed them to make certain they complied with Section II(H.) of the ordinance, which provides as follows:

"H. *Quality of Building Construction*

No structure or building shall be erected in or moved into the township unless such structure or building shall be decent, safe, and sanitary. Decent, safe and sanitary shall be defined as those buildings and structures erected within the specifications of the National Building Code of the American Insurance Association as used by the City of Jamestown. *Before any variance can be granted for the moving in of a building, a written request for a variance hearing must be received and petition signed by 100% of the property owners within a one-half (½) mile radius of the proposed location of the structure.*" [Emphasis added.]

The McLains were instructed that they must rezone the property on which they intended to place their house from an agricultural zone to a restricted residential zone. The McLains were also instructed to submit a formal plat of the property.

The McLains attempted to comply with these instructions. Bernard drafted a petition to obtain the signatures of the property owners within a one-half mile radius of the proposed location of their house in an attempt to comply with Section II(H.) of the Midway Township zoning ordinance. After the McLains believed they had obtained all the necessary signatures on the petition they presented it to the Midway Township board supervisors and to Mr. Purdy at an informal meeting on August 25, 1979. At that time the McLains were advised that they needed to obtain additional signatures from people living in a residential development called Diamond Acres which was located within the one-half mile radius of the proposed location of their house.

Following the informal meeting on August 25, 1979, the McLains attempted to once again obtain the necessary signatures to comply with Section II(H.) of the ordinance. Because the McLains had not taken the original petition with them after the August 25 meeting, Bernard drafted a new petition. He then secured the necessary signatures and submitted the petition to Purdy.

Purdy testified that while he was getting information together on the McLain matter for a rezone meeting to be held on October 2, 1979, he discovered that the second petition circulated by the McLains contained, in his opinion, defective wording which did not comply with the ordinance. According to Purdy, the petition was defective because it sought the approval of the property owners to allow the McLains to be their "neighbors" but failed to state that the McLains intended to move a house into the township. Purdy informed the McLains that in order to comply with the ordinance they would have to obtain signatures of the appropriate property owners on a corrected version of the circulated petition. The McLains attempted to obtain the necessary signatures on a newly drafted petition but, for various reasons, were unable to obtain all the necessary signatures.

On October 2, 1979, the Midway Township board of supervisors held a public hearing on the McLains' request to rezone their property. At that hearing many of the township citizens expressed an unfavorable attitude toward allowing the McLains to move into the township. Various members of the board of township supervisors also expressed reservations about the McLains' proposed move. The board members' reservations were primarily directed toward their concern about the future costs of building and maintaining a road to the McLains' property.

The McLains had promised Jamestown School District that the house their children purchased from the district would be removed from the school district's property by October 15, 1979. Although the McLains had not received approval to move the

house into the township, they hired a mover and directed him to move the house into the township by October 15, 1979. Upon learning of this, the township board of supervisors secured an ex parte court injunction prohibiting the removal of the house into the township. Subsequent to the service of the injunction against the mover, the house was vandalized while located on the school district property in Jamestown.

Thereafter, the McLains filed a damage action against Midway Township in the District Court of Stutsman County. In their complaint, the McLains asserted that the Midway Township zoning ordinance was unconstitutional and that the township and its representatives had acted unlawfully in refusing to permit them to move their house into the township. Midway Township moved for a dismissal of the action on the ground that the township was immune from suit, but the motion was denied by the district court. At the conclusion of the trial, the district court entered its judgment in favor of the McLains from which Midway Township has filed this appeal.

On appeal Midway Township asserts that it, as a political subdivision, is immune from the McLains' claim for damages pursuant to Subsection 32–12.1–03(3), N.D.C.C., which provides:

"*32–12.1–03. Liability of political subdivisions—Limitations.*

\* \* \* \* \* \*

3. A political subdivision shall not be liable for any claim based upon an act or omission of an employee of a political subdivision, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance, exercising due care, or the failure to exercise or perform a discretionary function or duty on the part of a political subdivision or its employees, whether or not the discretion involved be abused. Specifically, a political subdivision or an employee thereof shall not be liable for any claim which results from:

a. The decision to undertake or the refusal to undertake any legislative or quasi-legislative act, including the decision to adopt or the refusal to adopt any statute, charter, ordinance, order, regulation, resolution, or resolve.

b. The decision to undertake or the refusal to undertake any judicial or quasi-judicial act, including the decision to grant, to grant with conditions, to refuse to grant, or to revoke any license, permit, order, or other administrative approval or denial.

c. The decision to perform or the refusal to exercise or perform a discretionary function or duty, whether or not such discretion be abused and whether or not the statute, charter, ordinance, order, resolution, regulation, or resolve under which the discretionary function or duty is performed is valid or invalid.

Nothing contained in this subsection shall be construed to limit the liability of a political subdivision or an employee thereof for a personal injury arising out of the execution of any legislative or quasi-legislative act, judicial or quasi-judicial act, or discretionary function."

Upon reviewing the record, we conclude that Midway Township is immune from liability on the claims brought against them by the McLains. The township's immunity is specifically provided under parts a, b, and c of Subdivision 32–12.1–03(3), N.D.C.C., which states, in relevant part, that, "a political subdivision or an employee thereof shall not be liable for any claim which results from ... the decision to grant, to grant with conditions, to refuse to grant, or to revoke any license, permit, order, or other administrative approval or denial...." or "[t]he decision to perform or the refusal to exercise or perform a discretionary function or duty, whether or not such discretion be abused and whether or not the ... ordinance ... under which the discretionary function or duty is performed is valid or invalid."

The McLains' claim against the township is based entirely upon the actions of the township's representatives in refusing to grant the McLains' approval to move their house into the township until they had complied with all of the requirements of the Midway Township zoning ordinance. The township is immune from liability for those actions under Subsection 32–12.1–03(3), N.D.C.C., irrespective of whether or not the township representatives abused their discretion or whether or not the zoning ordinance, or parts of it, are invalid. More specifically, the McLains assert that Section II(H.) of the zoning ordinance, which requires approval of all property owners within a one-half mile radius of the proposed location for a structure, is unconstitutional and, in this instance, caused the McLains to suffer damages because they were unable to comply with the provision. On this appeal, Midway Township has conceded that Section II(H.) of the zoning ordinance is unconstitutional. Nevertheless, the conceded invalidity of the ordinance does not remove the township's shroud of immunity under Subsection 32–12.1–03(3), N.D.C.C.

In *Sande v. City of Grand Forks,* 269 N.W.2d 93 (N.D.1978), the plaintiffs brought a damage action against the Urban Renewal Agency of Grand Forks alleging that the agency provided the plaintiffs with erroneous information based upon old rules and regulations which ultimately caused the plaintiffs to lose their bus depot business. Regulations governing the operation of the agency required it to, among other things, "provide each business concerned with informational material." The plaintiffs asserted that the agency failed to comply with this requirement when it provided them with erroneous information. In concluding that the agency was immune from liability this Court said:

"... we hold that the Agency, in regard to the methods it used to pass on information as to its authority and methods, was engaged in a discretionary function, a quasi-governmental activity, and is therefore immune from suit on behalf of one who claims to have been given erroneous information to his detriment."

\* \* \* \* \* \*

"Since the Sandes' allegation is one of negligence in the exercise of a discretionary function, the claim is barred." 269 N.W.2d at 97–98.

As were the agency representatives in *Sande, supra,* the representatives of Midway Township in this case were involved in a discretionary process, *i.e.* the process of determining whether or not to approve the McLains' request to move their house into the township. That process, including the providing of information and directions to the McLains for complying with the township's zoning ordinance, is one for which no damage claim can be brought against Midway Township.

In accordance with this opinion the judgment of the district court is reversed.

VANDE WALLE, PEDERSON and SAND, JJ., concur.

SMITH, District Judge, sitting in place of PAULSON, J., disqualified.

SMITH, District Judge (concurring specially).

Counsel on appeal have conceded that certain language of the Midway Zoning Ordinance (Plaintiff's Exhibit No. 1.) should be found unconstitutional as an unlawful delegation of legislative power to individual citizens who are property owners within one-half mile radius of the proposed location of a structure intended to be moved into the township. The constitutionally offensive language is emphasised in the opinion of the Court as Subsection "H" of the Ordinance as follows:

"Before any variance can be granted for the moving in of a building, a written request for a variance hearing must be received and petition signed by 100% of the property owners within one-half (½) mile radius of the proposed location of the structure."

The admitted effect of that sentence is to give absolute veto power to any described property owner over the use by an affected landowner of his land.

In *Eck v. City of Bismarck,* 283 N.W.2d 193 at 197 (N.D.1979), our Court said *inter alia,*:

"... A zoning ordinance, one type of land-use regulation, will withstand constitutional scrutiny even though it diminishes the value of the regulated property (Citations omitted.), or disallows a use that the property owner considers to be the most valuable use of his property (Citations omitted.). Nevertheless, the State's power to zone is not boundless. A zoning ordinance must be reasonable: Courts will invalidate a zoning ordinance that bears no reasonable relationship to a legitimate governmental purpose, that is arbitrary, or that deprives a property owner of all or substantially all reasonable uses of his land. (Citations omitted.).

In my opinion this Court should have stated its acceptance of the parties' concessions and should have specifically held that the last sentence of Subsection I, Section II of the Midway Zoning Ordinance is invalid. In my opinion its invalidity would rest on its unreasonable delegation of a legislative power to any one member of an ascertainable group of property owners with the zoning district. This delegation suffers from the additional infirmity of providing an absolute veto to any such property owners without any right of administrative review of that veto being afforded to the affected landowner petitioner. The township has conceded to the appellant that this sentence of the ordinance is unconstitutional and that it should be invalidated. It appears to me that the constitutional objection to the language is that it grants a privilege to a particular class of citizens, *viz.,* property owners within one-half of the proposed building site. That privilege is a personal veto power over the petition of another landowner, for a moving permit. It partakes of a non-delagable governmental power. Furthermore, such privilege was not granted to all citizens resident therein on the same terms. The language should be declared invalid as being violative of Article I, Section 21 of the North Dakota Constitution:

"No special privileges or immunities shall ever be granted which may not be altered, revoked or repealed by the legislative assembly; nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens."

I am also persuaded that another section of the subject ordinance deserves attention. That is Section IV "Administration and Enforcement."

That Section provides in part:
"The Board of Supervisors of Midway Township shall assume the following responsibilities and duties in the administration of this zoning ordinance and in accordance with Chapter 58–03–11 to 38–03–15 of the North Dakota Century Code.
A. Duties of the Board of Supervisors:
1. Establish and administer the rules and procedures for conducting the zoning affairs of the township.

. . . . .

4. Establish requirements and procedures for submission of applications.

. . . . .

7. Issue Building Permits and Certificates of Compliance:

. . . .

8. Hear appeals from any person, party, firm or organization aggrieved by the actions or decisions of the zoning administrator."

The record in this case shows that the processing of the appellants' applications and petitions in this case was conducted on an *ad hoc* basis. The governmental immunity invoked here renders the township immune from liability for damages in this case. The township's officials should not infer from the Court's opinion herein that such governmental immunity excuses the township and its officials from carrying out the responsibilities to their constituents that they solemnly assumed when they, or their predecessors in office, enacted the Ordinance in question.

They have carried out those responsibilities in many respects. However, it appears

 

to this writer that the township's determination of inadequacy or insufficiency of the form of the appellants' petitions and applications should only have been based upon a procedural deficiency or rule violation of procedures or rules that had been previously established by the township under the ordinance. I agree that the township is immune from liability for damages in this case. I also believe that its officials should never-the-less be reminded that they are ultimately responsible to their constituent voters of the township for their performance under the ordinance.

With these additional statements, I concur in the decision of the Court.