Art and Sharon OLSON, Plaintiffs
and Appellants,

v.

CITY OF GARRISON, Defendant
and Appellee.

Civ. No. 950015.

Supreme Court of North Dakota.

Oct. 31, 1995.

James L. Norris, P.C. (argued), Bismarck, for plaintiffs and appellants; appearance by Daniel Harry Oster, Bismarck.

Curtis L. Wike (argued), Fleck, Mather & Strutz, Bismarck, for defendant and appellee.

NEUMANN, Justice.

The Olsons appeal from summary judgment dismissing their tort action against the City of Garrison for damages resulting from a broken water main. We affirm.

In November 1991 a break occurred in a City of Garrison water main adjacent to the building housing Art and Sharon Olson's silk screening business. The break flooded the basement of the Olsons' business with fourteen to eighteen inches of water and damaged or destroyed machinery and inventory. The record reveals at least one other break had occurred in the vicinity a few months earlier. According to the city engineer, no normal maintenance procedure can prevent water mains from breaking.

The record also reveals decisions concerning the operation and maintenance of the City's water main system were based upon various factors. These factors included the historical performance of the water main, the cost of repairing versus replacing the water main, the ability of the City to participate in grants or federally aided projects, and the condition of overlying streets.

The Olsons brought a tort action against the City for damages resulting from the broken water main; specifically, the Olsons alleged negligence. The City, in turn, moved for summary judgment, alleging the action was barred by the discretionary function exception to governmental liability. Following a hearing, the City's motion was granted. The Olsons appeal from that judgment.

■■■ Summary judgment is appropriate when, after viewing evidence most favorable to the party against whom summary judgment is sought, there exists no genuine issue of material fact in dispute. *Berg v. Lien*, 522 N.W.2d 455, 456 (N.D.1994). Even if factual disputes exist, they are not material unless resolution would alter the ultimate outcome. *Id.* However, we need not determine whether the Olsons have presented facts sufficient to survive summary judgment because we conclude the discretionary function exception to governmental liability provides immunity to the City of Garrison for the operation and maintenance of its water main system.

The discretionary function exception first appeared in *Kitto v. Minot Park District*, 224 N.W.2d 795 (N.D.1974), in which the court abolished the doctrine of governmental immunity, *id.* at 797, but retained some immunity for discretionary acts, stating:

> ... immunity [will be] retained for certain acts which go to the essence of governing. We do not contemplate that the essential acts of governmental decision-making be the subject of judicial second-guessing or harassment by the actual or potential threat of litigation. *We hold that no tort action will lie against governmental units for those acts which may be termed discretionary in character.* Included within this category are acts traditionally deemed legislative or quasi-legislative, or judicial or quasi-judicial, in nature.

*Id.* at 804 (emphasis added) (citations omitted). This discretionary function exception, now found in section 32–12.1–03(3) of the North Dakota Century Code, frames the analysis in the instant case.

Section 32–12.1–03(3) was enacted by the North Dakota Legislature in response to the *Kitto* decision and for the purpose of limiting governmental liability. *O'Fallon v. Pollard,*

427 N.W.2d 809, 811 (N.D.1988). It reads in relevant part:

> 3. A political subdivision is not liable for any claim based upon an act or omission of an employee of a political subdivision, exercising due care, in the execution of a statute or regulation whether or not such statute or regulation be valid, or based, upon the exercise or performance, exercising due care, or the failure to exercise or perform a discretionary function or duty on the part of a political subdivision or its employees, whether or not the discretion involved be abused.

NDCC § 32–12.1–03(3) (Supp.1995).[1] Apparently this language comes directly from the language used in the Federal Tort Claims Act.[2] *Compare* NDCC § 32–12.1–03(3) *with* 28 U.S.C. § 2680(a) (1994).

The problem that has plagued many courts, however, is defining a test for determining the scope of the discretionary function exception, or stated differently, for determining which governmental acts are discretionary. The *Kitto* court did not solve this problem definitively. Thus, it is necessary to examine briefly the law in North Dakota to see if it has been addressed elsewhere.

■ Two other tests for addressing the problem have been considered and subsequently rejected or at least not explicitly adopted in North Dakota. Those tests are the distinction between immune governmental acts and non-immune proprietary acts, and the distinction between immune planning acts and non-immune operational acts.[3] *Kit-*

---

1. In its entirety, section 32–12.1–03(3) reads:

   3. A political subdivision is not liable for any claim based upon an act or omission of an employee of a political subdivision, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance, exercising due care, or the failure to exercise or perform a discretionary function or duty on the part of a political subdivision or its employees, whether or not the discretion involved be abused. Specifically, a political subdivision or an employee thereof is not liable for any claim which results from:
   a. The decision to undertake or the refusal to undertake any legislative or quasi-legislative act, including the decision to adopt or the refusal to adopt any statute, charter, ordinance, order, regulation, resolution, or resolve.
   b. The decision to undertake or the refusal to undertake any judicial or quasi-judicial act, including the decision to grant, to grant with conditions, to refuse to grant, or to revoke any license, permit, order, or other administrative approval or denial.
   c. The decision to perform or the refusal to exercise or perform a discretionary function or duty, whether or not such discretion be abused and whether or not the statute, charter, ordinance, order, resolution, regulation or resolve under which the discretionary function or duty is performed is valid or invalid.
   d. The failure to provide or maintain sufficient personnel, equipment, or other fire protection facilities; or doing any fire extinguishment or fire prevention work, rescue, resuscitation, or first aid; or any other official acts within the scope of official duties; provided, however, this subsection does not

   provide immunity for damages resulting from acts of gross negligence.
   Nothing contained in this subsection may be construed to limit the liability of a political subdivision or an employee thereof for a personal injury arising out of the execution of any legislative or quasi-legislative act, judicial or quasi-judicial act, or discretionary function.

2. The discretionary function exception of the Federal Tort Claims Act is codified at 28 U.S.C. § 2680(a) and reads in relevant part:

   The provisions of this chapter and section 1346(b) of this title shall not apply to—
   (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

3. A third test concerning governmental liability and discretionary acts also has been recognized. This test makes a distinction between immune discretionary acts and non-immune ministerial acts. *Richmond v. Haney*, 480 N.W.2d 751, 758–60 (N.D.1992); *Miles Homes v. City of Westhope*, 458 N.W.2d 321, 325–27 (N.D.1990); *Loran v. Iszler*, 373 N.W.2d 870, 872–76 (N.D.1985). However, it appears the distinction applies to the liability or immunity of public officials as opposed to governmental units, such as a city or county. *E.g., Richmond*, 480 N.W.2d at 758–60 (involving police detective). Since the Olsons are challenging the acts of the City of Garrison and not a City of Garrison public official, the discretionary/ministerial act distinction is not applicable.

*to,* 224 N.W.2d at 805 (repudiating the governmental/proprietary distinction, characterizing it as a "quagmire"); *Sande v. City of Grand Forks,* 269 N.W.2d 93, 98 (N.D.1978) (recognizing the planning/operational distinction as helpful but not controlling). Thus, North Dakota law, with respect to the scope of the discretionary function exception, specifically the test for determining discretionary acts, is unsettled. North Dakota has yet to define its "more narrow and more rational ground for limiting [governmental] liability" under the discretionary function exception. *Kitto,* 224 N.W.2d at 805.

Nonetheless, the search for this limitation is not without direction. *Kitto* suggested this court refer to the "substantial experience in dealing with [the] discretionary function exception under the Federal Tort Claims Act" as a possible "useful source of reference,"[4] 224 N.W.2d at 804–05, and the North Dakota Legislature adopted essentially in whole the federal exception. *Compare* NDCC § 32–12.1–03(3) *with* 28 U.S.C. § 2680(a) (1994).

The federal discretionary function exception is based squarely on separation of powers concerns. The purpose of the exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Berkovitz v. United States,* 486 U.S. 531, 536–37, 108 S.Ct. 1954, 1959, 100 L.Ed.2d 531, 541 (1988). In other words, borrowing the language of the Minnesota Supreme Court, the purpose is "to assure that the courts do not pass judgment on policy decisions entrusted to coordinate branches of government ... [and to prevent]

tort actions from becoming a vehicle for judicial interference with executive and legislative policymaking." *Holmquist v. State,* 425 N.W.2d 230, 231 (Minn.1988).

Keeping in mind the importance of the concern for separation of powers, federal law has developed two inquiries to determine whether particular governmental conduct falls under the discretionary function exception. The focus of the inquiries is on "the nature of the conduct [not] the status of the actor." *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958, 100 L.Ed.2d at 540 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 813, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660, 674 (1984)). "In examining the nature of the challenged conduct, [the first inquiry a court must consider is] whether the action is a matter of choice for the acting employee." *Id.* "[C]onduct cannot be discretionary unless it involves an element of judgment or choice." *Id.* Thus, the discretionary function exception will not apply when a ... statute, regulation, or policy specifically prescribes a course of action for an employee to follow [because] "the employee has no rightful option but to adhere to the directive," *id.,* and because "the government has restricted its own discretion" through the directive. David S. Fishback & Gail Killefer, *The Discretionary Function Exception To The Federal Tort Claims Act: Dalehite To Varig To Berkovitz,* 25 Idaho L.Rev. 291, 298 (1988–89). Moreover, the directive must be specific and mandatory as opposed to a general statutory duty. *Kennewick Irrigation District v. United States,* 880 F.2d 1018, 1026 (9th Cir. 1989).

---

4. The federal courts, too, have struggled with defining a test for determining immune discretionary acts and non-immune nondiscretionary acts. *E.g., United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 811, 104 S.Ct. 2755, 2763, 81 L.Ed.2d 660, 673 (1984) (recognizing that "the Court's reading of the [Federal Tort Claims] Act admittedly has not followed a straight line"); *Berkovitz v. United States,* 486 U.S. 531, 539, 108 S.Ct. 1954, 1960, 100 L.Ed.2d 531, 542 (1988) (citing *Indian Towing Co. v. United States,* 350 U.S. 61, 64–65, 76 S.Ct. 122, 124–25, 100 L.Ed. 48, 53–54 (1955), in which the Court disapproved the gov-

ernment's argument that liability is precluded for "uniquely governmental functions"); *United States v. Gaubert,* 499 U.S. 315, 325–26, 111 S.Ct. 1267, 1275, 113 L.Ed.2d 335, 348–49 (1991) (referring to the planning/operational distinction as a "nonexistent dichotomy" and indicating that a discretionary act does not exclusively refer to the planning level). However, it appears federal law, at least for now, has settled on a test. *See generally* David S. Fishback & Gail Killefer, *The Discretionary Function Exception To The Federal Tort Claims Act: Dalehite To Varig To Berkovitz,* 25 Idaho L.Rev. 291, 294 (1988–89).

Turning to the instant case, the governmental conduct challenged by the Olsons is the operation and maintenance by the City of Garrison of its water main system. The Olsons have not identified a specific and mandatory statute, regulation, or policy that prescribes a course of action for the City's operation and maintenance of its water mains. Although an independent search by this court did reveal statutes and regulations governing, for example, the certification of water distribution system operators, NDCC ch. 23–26 (1991 & Supp.1995); N.D.Admin.Code art. 33–19 (1994), it did not reveal a specific and mandatory directive governing the operation and maintenance of a city's water main system.

Nevertheless, as indicated by the record, the City does consider various factors when making decisions about the operation and maintenance of its water mains. These factors include the historical performance of the water main, the cost of repairing versus replacing the water main, the ability of the City to participate in grants or federally aided projects, and the condition of overlying streets. These factors guide the City's decisions generally and involve discretion or judgment and are not specific and mandatory directives. *See, e.g., Kennewick*, 880 F.2d at 1026–32. Stated differently, the factors "do not contain directives so precise that they constrain the [City's] control" over the operation and maintenance of its water main system. *Cope v. Scott*, 45 F.3d 445, 450 (D.C.Cir.1995) (denying challenge to government's maintenance of a road where Park Service manual was applicable only "to the extent practicable ... the essence of discretion"); *Baum v. United States*, 986 F.2d 716, 722–24 (4th Cir.1993) (denying challenge to government's "judgments involving when and how to maintain its bridges and guardrails" where no specific and mandatory directive governed those judgments); *cf. ARA Leisure*

*Services v. United States*, 831 F.2d 193, 195 (9th Cir.1987) (upholding challenge to government's maintenance of a road in which Park Service standards had "explicit" requirements for road conditions). "Where there is room for policy judgment and decision there is discretion." *Berkovitz*, 486 U.S. at 537, 108 S.Ct. at 1959, 100 L.Ed.2d at 541 (quoting *Dalehite v. United States*, 346 U.S. 15, 36, 73 S.Ct. 956, 968, 97 L.Ed. 1427, 1441 (1953)). Therefore, the Olsons' tort action fails under the first inquiry.

The inquiry does not end here, however. Even if "the challenged conduct involves an element of judgment [or choice], [the second inquiry a court must consider is] whether that judgment [or choice] is of the kind that the discretionary function exception was designed to shield." *Id.* at 536, 108 S.Ct. at 1959, 100 L.Ed.2d at 541. "The focus of the inquiry is not on the [government's] subjective intent in exercising the discretion conferred ... but on the nature of the actions taken and on whether they are susceptible to policy analysis."[5] *United States v. Gaubert*, 499 U.S. 315, 325, 111 S.Ct. 1267, 1275, 113 L.Ed.2d 335, 348 (1991). This inquiry is more difficult to answer because it directly implicates the separation of powers concerns.

■ The purpose of the discretionary function exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Berkovitz*, 486 U.S. at 536–37, 108 S.Ct. at 1959, 100 L.Ed.2d at 541. When properly construed, the exception should shield only governmental action based on public policy considerations. *Gaubert*, 499 U.S. at 323, 111 S.Ct. at 1273, 113 L.Ed.2d at 346. Moreover, public policy considerations, social, economic, or political, must be distinguished from more objective standards based on, for example, scientific, engineering, or

---

5. There are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish. If one of the officials involved in this case drove an automobile on a mission connected with his official duties and negli-

gently collided with another car, the exception would not apply. Although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy.
*Gaubert*, 499 U.S. at 325, n. 7, 111 S.Ct. at 1275, n. 7, 113 L.Ed.2d at 348, n. 7.

technical considerations. *Kennewick,* 880 F.2d at 1030. The latter are not protected by the discretionary function exception, *id.,* when the challenged conduct involves nothing more than a "follow the numbers" approach. Fishback, *supra* at 325.

In the instant case, the challenged conduct is the operation and maintenance by the City of Garrison of its water main system. The decisions concerning the conduct turn not on objective standards but on public policy considerations. Specifically, the record reveals economic considerations dictated the City's actions regarding the water main system, and these actions can be described as "a question of how best to allocate resources." *Baum,* 986 F.2d at 724.

■ But economic considerations, when reduced to such ingredients as budgetary constraints or choices involving whether to spend money, do not themselves insulate governmental action. *Cope,* 45 F.3d at 449. It is when these ingredients are combined with others that economic considerations become grounded in policy. *See id.* at 451. For example, and similar to *Cope,* the record indicates no normal maintenance procedure would have prevented the water main that damaged the Olsons' property from breaking. *See id.* (stating "no regular maintenance would have prevented the road from deteriorating"); *see also Baum,* 986 F.2d at 723–24 (rejecting argument about how and when the government "should have" maintained a guardrail system because it is a policy-based decision). Only by balancing the previously enumerated factors, such as the cost of repairing versus replacing the water main and sources of funding, as well as others such as possible disruption to the economic activity on Main Street from excavating a water main, could the City make a judgment about an appropriate course of action. *See Cope,* 45 F.3d at 451 (discussing the balancing of factors such as "the allocation of funds among significant project demands ... and the inconvenience of repairs as compared to the risk of safety hazards"). This is a judgment so "inherently bound up in considerations of economic and political policy" that it cannot be subject to second-guessing by the judiciary. *Baum,* 986 F.2d at 724. Thus,

under the second inquiry, the Olsons' tort action challenging the City of Garrison's operation and maintenance of its water main system cannot be sustained; the conduct is of the type intended to be shielded by the discretionary function exception.

■ We are not suggesting that every decision made by a city about the operation and maintenance of its water main system is or should be shielded. *See Baum,* 986 F.2d at 724. But since we are confined to the facts of this case, we find it "unnecessary—and indeed impossible—to define with precision every contour of the discretionary function exception." *Varig Airlines,* 467 U.S. at 813, 104 S.Ct. at 2764, 81 L.Ed.2d at 674. It is sufficient to say "the legislature did not intend the ... exception to swallow the general rule" by preserving immunity for all governmental conduct. *Holmquist,* 425 N.W.2d at 231.

We conclude the City of Garrison's conduct falls within the discretionary function exception. Thus we need not reach the other issues raised by the Olsons.

Affirmed.

VANDE WALLE, C.J., and LEVINE and SANDSTROM, JJ., concur.

VANDE WALLE, Chief Justice, concurring in result.

I agree with the majority opinion. I write only to question the application in North Dakota of the quote from 78 Am.Jur.2d *Waterworks and Water Companies* § 60 (1975) that distribution of water to a city's inhabitants is a function undertaken by a city in its private or proprietary capacity. That statement, relied upon by Justice Meschke in his concurring opinion, may be true elsewhere but I doubt its validity in rural areas like North Dakota. One need only look at the many sections in the North Dakota Century Code regulating a city's authority to operate water distribution systems as evidence that it is a public function. *See, e.g.,* Chapter 40–22 and 40–33 of the NDCC.

The city is given the authority to operate a water distribution system in Chapter 40–33, NDCC, along with electric light and power

plants, telephone plant, natural gas plant and heating plant. Interestingly, however, the authority in Chapter 40–22 to levy special assessments for those purposes includes only water and sewer systems. Indeed, the history in North Dakota belies the Am.Jur. observation. Whereas in earlier years some cities owned and operated light plants and distribution systems, and a few may still do so, I believe most cities in North Dakota now receive electricity through investor-owned or member-owned entities. The reverse is true for water and sewer systems. Private enterprise has not attempted to provide the service for the obvious reason that water and sewer lines cannot be expanded like lines for electric and telephone utilities.

Although there are now some rural water distribution systems being formed that may deliver water to smaller cities, nearly all, if not all, water and sewer systems are operated by cities. If we were to adhere to the "ordinary liability" theory of the special concurrence for the water systems in small-town rural North Dakota, I suggest we would endanger their existence and foster their demise. The statement in the special concurrence that "[l]ike the physical operation of an electric system, the physical operation of a water system is not a discretionary function that shelters a governmental body from tort liability" is a fiction in North Dakota. Historically and practically there has been a great difference between electric plants and water plants. Additionally, the supporting citation for that statement, *Aslakson v. United States,* 790 F.2d 688, 693 (8th Cir.1986) involved the Western Area Power Association, WAPA, a large electric distribution system which is an agency of the United States!

If it is argued that unless cities can pay ordinary negligence claims they should not have the water or sewer system, that argument is ruthless as applied to rural North Dakota, particularly when its purpose is to support a legal fiction, i.e., private or proprietary operation of water systems, that does not and probably never existed in this State. I resist the incorporation of this philosophy to the operation of water or sewer systems in small-town North Dakota, which already struggles for survival.

MESCHKE, Justice, concurring.

I concur in the result only. I write separately to explain why I believe the majority opinion unnecessarily invokes the discretionary-function exception for municipal tort liability. I join in affirming because there was no showing of any negligence by the City.

Since *Kitto v. Minot Park Dist.,* 224 N.W.2d 795 (N.D.1974), each political subdivision continues to be liable for its negligent conduct, and for the negligent conduct of an employee acting within the scope of employment, "under circumstances where the political subdivision, if a private person, would be liable to the claimant." NDCC 32–12.1–03(1). There are some exceptions however, to municipal tort liability. For one, a municipality is not liable for a tort claim based upon a discretionary function. NDCC 32–12.1–03(3). As *Kitto* explained, 224 N.W.2d at 804, the tort liability of a municipality does "not contemplate that the essential acts of governmental decision-making be the subject of judicial second-guessing or harassment by the actual or potential threat of litigation."

This discretionary-function exception respects the constitutional separation of powers by preventing judicial interference with policymaking of the executive and legislative branches, even at the local level. *See generally* W. Page Keeton, *Prosser & Keeton on the Law of Torts* § 131, at 1039 (5th ed. 1984). As the Minnesota Supreme Court well explained in *Holmquist v. State,* 425 N.W.2d 230, 231–32 (Minn.1988), the discretionary-function exception applies to governmental decisions choosing between competing public policy considerations.

This case is not about governmental planning or policymaking. Nor should we confuse it with operational phases of a governmental regulatory program that would be an essential act of governmental decisionmaking. *See United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). Rather, this case is about the physical operation of a water system. Historically,

> distribution of water to its inhabitants is a function undertaken by a municipality in its private or proprietary capacity, and in the exercise of such a function a municipality is subject to the same liabilities as govern a private individual or corporation

in like circumstances. Also, the standard of care is the same as that exacted from a private company. A municipality in maintaining a water supply system is chargeable with a duty to construct and maintain its water reservoirs with reasonable care....

A municipal corporation engaged in the business of supplying water to its inhabitants is liable for injuries resulting from negligence on its part in laying its water pipes in the public streets;.... It is, in short, liable to all persons injured by the negligent construction, management, and operation of the waterworks. However, a municipality is not an insurer of the safety of its waterworks or against injuries resulting from its operation of a water supply system, and may not be held liable therefor unless the injuries complained of are proximately caused by the negligence of itself or its employees.

78 Am.Jur.2d *Waterworks and Water Companies* § 60 (1975) (footnotes omitted). If every city decision about the physical operation of its water system becomes a discretionary function, the exception will swallow the general rule of tort liability equivalent to that of a private person.

Like the physical operation of an electric system, the physical operation of a water system is not a discretionary function that shelters a governmental body from tort liability. *See Aslakson v. United States,* 790 F.2d 688, 693 (8th Cir.1986) ("As a general rule, operational mismanagement in the maintenance of electrical transmission lines does not fall within the scope of the discretionary function exception."). We should analyze this case under normal negligence doctrine.

A single prior break in an underground waterline does not evidence unreasonable operation, because there can be many reasons for the break, apart from negligent conduct. Here, there was no evidence from the Olsons that the City acted unreasonably in maintaining and operating its waterlines. There is no evidence that a reasonable operator would have replaced the water main or taken it out of service. I agree with that small part of the majority opinion that says "the record indicates no normal maintenance procedure would have prevented the water main [break] that damaged the Olsons' property...." Therefore, I agree summary judgment was proper.