1999 ND 197

**Ardis PETERSON, individually and as Personal Representative of the Estate of Leroy A. Peterson, Plaintiff and Appellant,**

v.

**TRAILL COUNTY, a political subdivision, Defendant and Appellee.**

**No. 990083.**

Supreme Court of North Dakota.

Oct. 20, 1999.

Dan D. Plambeck (argued) and Dennis D. Fisher (appearance), Stefanson, Plam-beck & Foss, Moorhead, MN, for plaintiff and appellant.

Corey J. Quinton (argued) and Paul R. Oppegard (appearance), Smith Bakke Hovland & Oppegard, Moorhead, MN, for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Ardis Peterson, individually and as personal representative of the estate of Leroy A. Peterson, appealed from a judgment dismissing her personal injury action against Traill County. We conclude the County does not have governmental immunity from Peterson's lawsuit, and the trial court erred in granting the County's motion for judgment as a matter of law at the close of Peterson's case. We reverse and remand for a new trial.

I

[¶ 2] On Friday evening, April 13, 1990, Leroy Peterson was arrested at his home for non-payment of child support and taken to the Traill County jail in Hillsboro. Peterson was very intoxicated at the time of the arrest, and when he arrived at the jail for booking about 10 p.m., the jailer locked him in a detoxification cell. The following morning, Peterson was placed in the "bullpen" area of the jail, which also held three other adult prisoners.

[¶ 3] Peterson claimed he suffered from alcohol withdrawal while he was in the jail over the weekend. One of Peterson's fellow inmates said Peterson spent all day Saturday vomiting, and on Sunday and early Monday morning the inmate reported to a jailer Peterson was becoming disoriented. The inmate reported to jailers Peterson was mumbling while walking in circles and tried to get into the shower fully clothed. The inmate also reported Peterson would not eat, was climbing on bars trying to get a hat and coat so he could go home, and tried to pick up nonexistent money from the floor. The jailers testified they did not witness Peterson's strange behavior. However, a deputy observed Peterson's hands were shaking, he

was restless at times, and he was not eating all the food given him by jail staff. The jailers called Traill County Sheriff Richard Fischer on Saturday evening and again early Monday morning, and Fischer told the jailers to keep an eye on Peterson and to make an appointment Monday morning to have him evaluated by a doctor.

[¶ 4] One of the jailers called a nearby clinic at 9:10 a.m. Monday morning. The clinic said a doctor would not be arriving until 9:30 a.m., and the clinic would call back as soon as the doctor arrived. At 9:25 a.m., Peterson fell in his cell at the jail and suffered a serious head injury.

[¶ 5] Leroy Peterson sued Fischer and Traill County in federal district court, alleging a 42 U.S.C. § 1983 claim and other claims under state and federal law for failure to provide him timely medical care. All of Peterson's claims, except his pendent state law negligence claims, were dismissed by the federal district court and the Eighth Circuit Court of Appeals. Peterson then began this personal injury action against Traill County in state court. Peterson alleged the County was liable for the negligence of its sheriff and jailers in failing to properly monitor him when he was suffering from alcohol withdrawal, failing to immediately arrange for his medical care, failing to consult with a health care professional before making a decision to delay medical care, failing to appoint a health care administrator for the jail, and failing to properly train county jailers. Ardis Peterson was substituted as plaintiff after Leroy Peterson died. At the close of Peterson's case during a jury trial, the trial court granted the County's motion for judgment as a matter of law. The court ruled Fischer and the jailers were performing a discretionary function for which Traill County was entitled to governmental immunity, and dismissed Peterson's action.

[¶ 6] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Peterson's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

## II

[¶ 7] The standard of review on a motion for judgment as a matter of law under N.D.R.Civ.P. 50 is the same as the standard applied to motions for directed verdict before the rule was modified in 1994. *Perry v. Reinke*, 1997 ND 213, ¶ 12 n. 1, 570 N.W.2d 224. The trial court's decision on a motion brought under N.D.R.Civ.P. 50 to grant or deny judgment as a matter of law is based upon whether the evidence, when viewed in the light most favorable to the party against whom the motion is made, leads to but one conclusion as to the verdict about which there can be no reasonable difference of opinion. *Felco, Inc. v. Doug's North Hill Bottle Shop*, 1998 ND 111, ¶ 8, 579 N.W.2d 576. In determining whether the evidence is sufficient to create an issue of fact, the trial court must view the evidence in the light most favorable to the non-moving party, and must accept the truth of the evidence presented by the non-moving party and the truth of all reasonable inferences from that evidence. *Symington v. Mayo*, 1999 ND 48, ¶ 4, 590 N.W.2d 450. A trial court's decision on a motion for judgment as a matter of law is fully reviewable on appeal. *Knoff v. American Crystal Sugar Co.*, 380 N.W.2d 313, 318 (N.D.1986).

### A

[¶ 8] Limitations on the liability of political subdivisions are set forth in N.D.C.C. § 32–12.1–03, which provides in part:

3. A political subdivision is not liable for any claim based upon an act or omission of a political subdivision employee exercising due care in the execution of a valid or invalid statute or regulation or based upon the exercise or performance, exercising due care, or the failure to exercise or perform a discretionary function or duty on the part of a political subdivision or its

employees, whether or not the discretion involved is abused. Specifically, a political subdivision or a political subdivision employee is not liable for any claim that results from:

   a. The decision to undertake or the refusal to undertake any legislative or quasi-legislative act, including the decision to adopt or the refusal to adopt any statute, charter, ordinance, order, regulation, resolution, or resolve.

   b. The decision to undertake or the refusal to undertake any judicial or quasi-judicial act, including the decision to grant, to grant with conditions, to refuse to grant, or to revoke any license, permit, order, or other administrative approval or denial.

   c. The decision to perform or the refusal to exercise or perform a discretionary function or duty, whether or not such discretion is abused and whether or not the statute, charter, ordinance, order, resolution, regulation, or resolve under which the discretionary function or duty is performed is valid or invalid.

   d. The failure to provide or maintain sufficient personnel, equipment, or other fire protection facilities; or doing any fire extinguishment or fire prevention work, rescue, resuscitation, or first aid; or any other official acts within the scope of official duties; provided, however, this subdivision does not provide immunity for damages resulting from acts of gross negligence.

. . . .

This subsection does not limit the liability of a political subdivision or an employee thereof for a personal injury arising out of the execution of any legislative or quasi-legislative act, judicial or quasi-judicial act, or discretionary function.

[¶ 9] The trial court ruled, as a matter of law, the sheriff and the jailers' decision whether Peterson needed immediate medical attention was a discretionary function for which the County was immune from suit under N.D.C.C. § 32–12.1–03(3)(c). The court further ruled the part of the statute providing liability is not limited for a personal injury arising out of the execution of any discretionary function did not apply because Peterson had not alleged or presented any evidence to show his injury was caused by affirmative actions taken by the sheriff or jailers, but only alleged his injury was caused by their omission to act. We believe the trial court incorrectly interpreted the statute.

[¶ 10] The interpretation of a statute is a question of law fully reviewable on appeal. *Haff v. Hettich*, 1999 ND 94, ¶ 9, 593 N.W.2d 383. Our primary objective in construing a statute is to ascertain the intent of the legislature by looking at the language of the statute itself and giving it its plain, ordinary, and commonly understood meaning. N.D.C.C. §§ 1–02–02 and 1–02–03; *Falcon v. State*, 1997 ND 200, ¶ 9, 570 N.W.2d 719. If the language of the statute is clear and unambiguous, the legislative intent is presumed clear from the face of the statute. N.D.C.C. § 1–02–05; *Blikre v. ACandS, Inc.*, 1999 ND 96, ¶ 5, 593 N.W.2d 775. Statutes must be construed as a whole to determine the legislative intent, and the intent must be derived from the whole statute. N.D.C.C. §§ 1–02–07 and 1–02–38(2); *Narum v. Faxx Foods, Inc.*, 1999 ND 45, ¶ 18, 590 N.W.2d 454.

[¶ 11] Generally, N.D.C.C. § 32–12.1–03(3) exempts a political subdivision from liability for an act or omission of its employees who are performing discretionary functions or duties. However, determining when the discretionary function exception applies in a case involving a political subdivision is no simple task. *See, e.g., Olson v. City of Garrison*, 539 N.W.2d 663 (N.D.1995); *Richmond v. Haney*, 480 N.W.2d 751 (N.D.1992); *Miles Homes v. City of Westhope*, 458 N.W.2d

321 (N.D.1990); *McCroskey v. Cass County,* 303 N.W.2d 330 (N.D.1981); *Sande v. City of Grand Forks,* 269 N.W.2d 93 (N.D. 1978); *Kitto v. Minot Park District,* 224 N.W.2d 795 (N.D.1974). In *Olson,* 539 N.W.2d at 666, we noted the legislature had adopted the discretionary function exception from 28 U.S.C. § 2680(a) of the Federal Tort Claims Act, and looked to federal court interpretations for guidance in determining when the exception applies. The federal courts engage in a two-part inquiry: (1) whether the conduct at issue is discretionary, involving an element of judgment or choice for the acting employee; and (2) if the act is discretionary, whether that judgment or choice is of the kind the discretionary function exception was designed to shield. *Olson,* 539 N.W.2d at 666–67.

[¶ 12] The first element is not met if a statute, regulation, or policy specifically prescribes a mandatory course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive. *Olson,* 539 N.W.2d at 666. In this case, "[s]ubject to reasonable safety, security, discipline, and correctional facility administration requirements," the County had the duty to "[e]nsure that inmates have adequate medical care." N.D.C.C. § 12–44.1–14(6). *See also* N.D. Admin. Code § 10–05–06–02 (repealed effective April 1, 1994). The jail was required to have a licensed physician or registered nurse available on a 24–hour basis, N.D. Admin. Code § 10–05–06–03 (repealed effective April 1, 1994), and Fischer, as jail administrator, was required to adopt a written plan providing for transportation of an inmate to a medical facility in the event of a medical emergency. N.D. Admin. Code § 10–05–06–04 (repealed effective April 1, 1994). Under the County's jail operations manual, if a jailer believed an emergency medical problem existed, the jailer should have immediately called the Hillsboro Community Hospital. The manual also provided if an inmate exhibited signs of alcohol with-drawal, immediate medical care should be arranged. We believe these duties, although mandatory, nevertheless involve an element of judgment. Obviously, some subjective determinations need to be made in deciding whether an inmate is suffering from alcohol withdrawal necessitating transport to a medical facility. *See McCroskey,* 303 N.W.2d at 334–35; *Sande,* 269 N.W.2d at 97.

[¶ 13] We conclude, however, this judgment or choice is not a discretionary function. The primary focus of the second part of the test is on the nature of the actions taken and on whether they are susceptible to policy analysis. *Olson,* 539 N.W.2d at 667. We explained in *Olson,* 539 N.W.2d at 667–68 (citations omitted):

The purpose of the discretionary function exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." When properly construed, the exception should shield only governmental action based on public policy considerations. Moreover, public policy considerations, social, economic, or political, must be distinguished from more objective standards based on, for example, scientific, engineering, or technical considerations. The latter are not protected by the discretionary function exception, when the challenged conduct involves nothing more than a "follow the numbers" approach.

[¶ 14] No social, economic, or political policy is implicated in deciding whether an inmate has alcohol withdrawal and whether transfer to a medical facility is necessary. Rather, this is an ordinary individualized judgment made by jailers as part of their routine work duties. Federal cases analyzing analogous situations strongly suggest the challenged actions, or inactions, of the County's employees are not within the discretionary function exception. *Fang v. United States,* 140 F.3d 1238, 1243 (9th Cir.1998) (holding spinal immobiliza-

tion procedure by emergency medical technicians not subject to discretionary function exception); *Magee v. United States,* 121 F.3d 1, 6 (1st Cir.1997) (holding medical treatment not subject to discretionary function exception); *Lather v. Beadle County,* 879 F.2d 365, 368 (8th Cir.1989) (emphasis in original) (holding "it is incongruous to say that simply because a government physician exercised medical judgment, regardless of whether it related to a *policy decision,* he or she has exercised governmental discretion"); *Keir v. United States,* 853 F.2d 398, 409 (6th Cir.1988) (holding doctor's' alleged negligence in failing to follow standard operating procedure not subject to discretionary function exception); *Rise v. United States,* 630 F.2d 1068, 1072 (5th Cir.1980) (holding decision to refer to hospital is not covered by discretionary function exception). Furthermore, claims of governmental immunity under state laws made by sheriffs and jailers in similar circumstances have generally been rejected by courts. *See, e.g., State of Mississippi v. Durham,* 444 F.2d 152, 157 (5th Cir.1971) (holding under Mississippi law no judicial immunity for sheriff's decision prisoner 'did not need medical attention); *Gillam v. Lloyd,* 172 Mich.App. 563, 432 N.W.2d 356, 363 (1988) (holding prisoner's probation officer was not entitled to governmental immunity against claim she negligently failed to obtain prisoner's release from jail when it became apparent prisoner was too sick to be there because role in determining release from jail was a ministerial, rather than discretionary, act); *Farmer v. State,* 224 Miss. 96, 79 So.2d 528, 530 (1955) (holding where sheriff and jailer did not examine prisoner to see if he needed medical aid, they were not entitled to judicial immunity from negligence action); *Smith v. Slack,* 125 W.Va. 812, 26 S.E.2d 387, 388 (1943) (holding jailer's duty to see sick prisoner is provided adequate medical attention and nursing is ministerial duty for which there is no governmental immunity). *See also* Annot., *Civil liability of sheriff or other officer charged with keeping jail or prison for death or injury of prisoner,* 14 A.L.R.2d 353, §§ 3 and 9 (1950).

■■■ [¶ 15] In deciding the County was entitled to governmental immunity, the trial court analyzed the seven factors set forth in Comment f to § 895D of the *Restatement (Second) of Torts* for distinguishing between discretionary and ministerial acts, which we adopted in *Loran v. Iszler,* 373 N.W.2d 870, 873 (N.D.1985). We need not consider those factors in this case, because even if the challenged actions of the sheriff and jailers fell within the discretionary function exception, the court nevertheless erred in ruling the County was entitled to governmental immunity.

[¶ 16] After stating the general rule that a political subdivision is exempted from liability for an act or omission of its employees who are performing discretionary functions or duties, N.D.C.C. § 32–12.1–03(3) contains the unambiguous proviso "[t]his subsection does not limit the liability of a political subdivision ... for a personal injury arising out of the execution of any ... discretionary function." The County argues, and the trial court ruled, the legislature, by using the phrase "arising out of the execution of" any discretionary function, intended to create a distinction between affirmative actions by political subdivision employees and failures to act by those employees. According to the County's argument, only when an employee causes personal injury by an affirmative act does the County lose its governmental immunity for a discretionary function. Because there was no claim the sheriff or jailers caused Peterson's injury by "push[ing]," "shov[ing]," "dropp[ing]," or "tripp[ing]" him, the County argues the injury did not arise out of the execution of a discretionary function and it retains its governmental immunity. We reject this strained construction of the statute.

[¶ 17] This Court has not specifically construed the personal injury exception to

governmental immunity under N.D.C.C. § 32–12.1–03(3). *See Muchow v. Lindblad*, 435 N.W.2d 918, 920 n. 2 (N.D.1989). However, in *Binstock v. Fort Yates Public School District*, 463 N.W.2d 837, 842 (N.D. 1990), which involved a personal injury action against a political subdivision concerning an alleged assault by its employee, we explained:

> Although chapter 32–12.1, NDCC, immunizes employees from their ordinary negligence while acting within the scope of their employment [NDCC § 32–12.1–03(2) ] it does not negate the liability of political subdivisions for injuries caused by employees acting within the scope of their employment, whether or not such acts are those of ordinary negligence or reckless or grossly negligent conduct, or willful or wanton misconduct. The political subdivision remains liable under the doctrine of respondeat superior for all acts of its employees performed within the scope of employment to the maximum amount specified in section 32–12.1–03(2), NDCC.

[¶ 18] There is no logical or principled basis for recognizing the distinction between acts and omissions sought by the County. Not only does N.D.C.C. § 32–12.1–03(3) speak in terms of "an act or omission," but N.D.C.C. § 32–12.1–03(1) provides "[e]ach political subdivision is liable for money damages for injuries when the injuries are proximately caused by the negligence or *wrongful act or omission* of any employee acting within the scope of the employee's employment or office under circumstances where the employee would be personally liable to a claimant in accordance with the laws of this state...." (Emphasis added). Under North Dakota's modified comparative fault statutes, the concept of " 'fault' includes *acts or omissions* that are in any measure negligent or reckless towards the person or property of the actor or others...." N.D.C.C. § 32–03.2–01 (emphasis added). Certainly passive omissions to act can cause as harmful an injury as affirmative actions. Adopting the County's proposed distinction would encourage employees to fail to act in situations where a duty to do so clearly arises, merely to retain governmental immunity. This result is not only ludicrous, but the consequences could be hazardous and tragic.

[¶ 19] We conclude the phrase "personal injury arising out of the execution of any ... discretionary function" means a personal injury arising directly out of the execution of the discretionary function or decision itself, regardless of whether it is caused by an allegedly negligent affirmative act or omission to act. Here, Peterson alleges he suffered a personal injury because the jailers, who were directly responsible for assessing his alcohol withdrawal symptoms, were negligent in failing to transfer him to a medical facility for treatment. Peterson alleges a personal injury, arising not as a remote consequence of a general discretionary function, but arising out of the direct execution of the jailers' function of personally assessing his need for medical treatment. The trial court erred in concluding the County was entitled to governmental immunity in this case.

B

[¶ 20] Law enforcement officers owe a general duty of care to those who have been arrested and incarcerated. *Falkenstein v. City of Bismarck*, 268 N.W.2d 787, 792 (N.D.1978). As this Court explained in *Falkenstein*:

> "If the law imposes a duty of care in respect of animals and goods which ... [a sheriff] has taken into his possession by virtue of his office, why should not the law impose the duty of care upon him in respect of human beings who are in his custody by virtue of his office? Is a helpless prisoner in the custody of a sheriff less entitled to his care than a bale of goods or a dumb beast?"

(quoting *State of Indiana v. Gobin*, 94 F. 48, 50 (C.C.D.Ind.1899)).

[¶ 21] The facts were contested at trial. However, for purposes of a motion for judgment as a matter of law, we view the evidence in the light most favorable to the party against whom the motion is made, and must accept the truth of the evidence presented by the non-moving party and the truth of all reasonable inferences from that evidence. *Symington*, 1999 ND 48, ¶ 4, 590 N.W.2d 450; *Felco*, 1998 ND 111, ¶ 8, 579 N.W.2d 576.

[¶ 22] There is evidence Peterson was intoxicated when he was arrested and brought to the jail and Fischer, who was acquainted with Peterson, knew he was an alcoholic. The Traill County Sheriff's office had taken Peterson to the Jamestown State Hospital on prior occasions for treatment. While confined in the jail in 1989, Peterson suffered a seizure from alcohol withdrawal and was taken to the Hillsboro Community Hospital by ambulance. During the weekend of the arrest, Peterson began exhibiting signs of alcohol withdrawal. Peterson's fellow inmate reported these symptoms to the jailers, who, upon failing to observe the symptoms themselves, told the inmates to watch over Peterson.

[¶ 23] Peterson presented evidence alcohol withdrawal symptoms can be treated, but a thorough medical evaluation is required. Alcohol withdrawal symptoms wax and wane over time, and a person suffering from symptoms may be alert and oriented one minute, and experiencing delirium tremens the next. Although jailers are not trained to diagnose alcohol withdrawal, jailers should be trained to recognize the symptoms and to respond properly when they are present. This information was contained in the jail's operations manual and the jailers' training manual.

[¶ 24] Alcohol withdrawal treatment should be given in a safe environment where the patient is unable to harm himself. The clinic in Hillsboro is about four blocks from the jail and the Hillsboro Community Hospital is about five blocks from the jail. Emergency services are provided, and a doctor could have been called by a jailer in the event of a medical emergency. Fischer indicated he delayed providing medical treatment to Peterson because he did not believe there was a medical emergency and because of the higher cost of emergency medical services. Peterson presented evidence the response of Fischer and the jailers to his symptoms was inappropriate and inadequate, and early medical treatment could have prevented serious withdrawal symptoms and possibly could have prevented Peterson's head injury.

[¶ 25] We conclude there was sufficient evidence from which the jury could have found Fischer and the jailers were negligent, and the County was liable for Peterson's injury. The trial court erred in granting the County's motion for judgment as a matter of law at the close of Peterson's case.

III

[¶ 26] The judgment is reversed, and the case is remanded for a new trial. Peterson's request for a different judge to preside over the new trial is denied.

[¶ 27] GERALD W. VANDE WALLE, C.J., and WILLIAM A. NEUMANN, MARY MUEHLEN MARING and CAROL RONNING KAPSNER, JJ., concur.